## THE CHARLES E. WISWALL.

### THE CHARLES E. WISWALL v. SCOTT et al.

(Circuit Court of Appeals, Second Circuit. March 2, 1898.)

### No. 72.

1. MONOPOLIES—INTERSTATE COMMERCE.

   A combination or trust between the owners of tugs operating entirely within the confines of a state is not a combination in restraint of trade or commerce among the several states or with foreign nations, so as to come within the condemnation of the statutes of the United States, although most of the owners held coasting licenses.

2. SAME—TOWAGE CHARGES.

   One who requests and accepts the services of a tug for towage purposes cannot escape paying the reasonable value of the services rendered, on the ground that the owners of the tugs were members of an unlawful combination to raise prices. 74 Fed. 802, affirmed.

This cause comes here upon appeal from a decree of the district court, Northern district of New York, in favor of the libelants, twelve in number, who were severally owners of fourteen propellers or steam tugs which had rendered towage service to the dredge and her scows.

The suit was originally begun by the present libelants, and by eight others, who owned, respectively, nine additional steam tugs or propellers; but, it appearing that no services had been rendered by these last-mentioned nine vessels, the libel was amended accordingly, at final hearing. The court found that the remaining libelants were entitled to recover the value of the services rendered by their respective tugs, and referred it to a commissioner to ascertain, determine, and report the values of the services of the respective vessels over and above all payments on account thereof which may be established by the evidence; such values and the amounts of such payments to be determined upon the evidence already taken, and such additional evidence as may be produced and given by the respective parties before such commissioner. Abundant oppor-

tunity was given to all parties by the commissioner to take additional evidence, but none was offered. The commissioner thereafter reported the value of the services of the vessels over and above all payments, separately as to each vessel. He did not separately state the value of the services of each tug, and the amount of the payment thereon, but, inasmuch as it appears conclusively that $310 was paid, it would seem that he found the total value of the services to be $1,269.16. The value asserted in the amended libel was $1,300. Claimant filed exceptions to the report, and, the report and exceptions coming on to be heard, the decree now appealed from was entered.

Worthington Frothingham, for appellant.

Isaac Lawson, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). The record is long and somewhat involved, and the commissioner's report has not set forth his findings with sufficient detail to be of much assistance to the court in determining just what he did find and upon what proof. This appeal may be best disposed of by taking up the assignments of error seriatim.

1. It is assigned as error that the libelants in the original libel and in the amended libel were a combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce among the several states and with foreign nations; that libelants were engaged in an attempt to monopolize such trade or commerce; and that all the work alleged to have been done by them collectively or individually was under a contract or combination in such form, and that such contract or combination was void, and the libelants cannot maintain this suit either collectively or individually. We do not find any satisfactory evidence that these boats were "engaged in trade or commerce among the several states or with foreign nations." Most of them held coasting licenses, but there is not a scintilla of evidence to show that they ever did anything except to tow canal boats, barges, and such craft on the waters of the Hudson River above Poughkeepsie, and entirely within the limits of the state of New York. And it seems wholly unnecessary to inquire whether their owners had entered into any unlawful combination under the laws of the state. Finding that the rates of compensation for the services of themselves, their crews and their tugs, were becoming so low as to be unremunerative, uncertain, and irregular, they agreed with each other to charge for all services rendered by each vessel such sums as might be fixed by a tariff which they adopted. They called themselves the "Hudson River Tug-Boat Association," had a so-called superintendent to allot work among them, adopted a system of fines, etc., but they never became a legal entity either as a corporation, a joint-stock association, or a partnership. They made collectively no contract with the claimant, nor were they capable of making such contract. Each piece of towage service rendered was a transaction between the boat towing and the boat towed, with which the other boat owners in the association had nothing to do. Indeed, the libel (original and amended) is obnoxious to the objection of an improper joinder of libelants. Each should have brought a separate libel;

but since this objection was apparently not taken below, and the only result would be to increase the costs to be paid by the defeated party, it need not now be considered. The contracts upon which recovery was had were not with the so-called combination, but severally, with the several tugs rendering the service; the amount of compensation asked and found is the fair and reasonable value of such service; and the existence of the "combination" is no bar to its recovery. The defendant's proposition is that a person who has given work, labor, and services to another, upon that other's employment, may not recover their fair and reasonable value if, during the time that he rendered such services, he had been engaged with other men in like employment with himself in a combination to charge for such services as any of them might render according to some scale agreed upon by them. We know of no principle of law which calls for the adoption of such a rule, and are referred to no authorities which support it. The cases cited on appellant's brief are not applicable. The only contract considered in U. S. v. Trans-Missouri Freight Ass'n, 166 U. S. 290, 17 Sup. Ct. 540, was the contract between the members of the combination. The action in Bank v. Owens, 2 Pet. 538, was brought on the usurious note by the bank that exacted the usury; and the same is true of Bank v. Lamb, 26 Barb. 596. In Leonard v. Poole, 114 N. Y. 377, 21 N. E. 707, the court refused to take an accounting between two parties to an illegal transaction. In Association v. Houck (Tex. Sup.) 30 S. W. 869, it appeared that defendants Houck and Dieter had entered into an unlawful combination with other dealers in beer, which secured control of the trade. Plaintiff, by contract with defendants, bound itself to sell to the latter, and to no other dealer in the city of El Paso,—a contract which gave the combination a monopoly of the sale in the city of El Paso of the product of plaintiff's brewery, and materially assisted the parties to the illegal contract in carrying out their object of controlling the market for the sale of beer in that city. The court held that if the plaintiff, when it made its contract with Houck and Dieter, knew of the existence of the combination, it was not an innocent seller, and could not recover, since its contract "is calculated materially to aid the purchasers in effecting their unlawful design." In Peck v. Burr, 10 N. Y. 294, it was held that, where a contract is void because of its illegality, there can be no recovery for services rendered under it upon a quantum meruit. But there is nothing illegal about the several contracts sued upon here, which are to render towage services in consideration of the payment of the reasonable value of such services. In Arnot v. Coal Co., 68 N. Y. 558, it was held that "the agreement of the B. C. Co. (of which plaintiff was an assignee) not to sell to others, it knowing that the object of defendant was to create a monopoly, and that this was one of the means of averting competition, made it a party to the illegal scheme of defendant." This is very far from supporting the proposition that had the Pittston & Elmira Coal Company sold 1,000 tons of the coal thus purchased to a local dealer in New York City, at fair market rates, it could not recover.

On the other hand, the principle is well recognized by the authorities that a promise remotely connected with an illegal act, and founded on a new consideration, is not tainted with the illegality, although it was known to the party to whom the promise was made, and although he was the contriver and conductor of the illegal act. One illustration given in Armstrong v. Toler, 11 Wheat. 258, is this:

> "The man who imports goods for another, by means of a violation of the laws of his country, is disqualified from founding any action upon such illegal transaction for the value or freight of the goods. * * * But, after the act is accomplished, no new contract ought to be affected by it. It ought not to vitiate the contract of the retail merchant who buys these goods from the importer."

The test, whether a demand connected with an illegal transaction is capable of being enforced at law, is whether the plaintiff requires the aid of the illegal transaction to establish his case. If he cannot open his case, without showing that he has broken the law, a court will not assist him. But if he does not claim through the medium of the illegal transaction, but upon a new contract bottomed on independent consideration, he may recover. Swan v. Scott, 11 Serg. & R. 155; Armstrong v. Toler, 11 Wheat. 258; McBlair v. Gibbes, 17 How. 236. In the case at bar libelants clearly did not require the aid of the alleged illegal transaction to establish their case.

2. It is further assigned as error that "there was on the trial no sufficient proofs of the value of the services alleged to have been performed by the libelants or either of them, and no proof excepting of such value as was made and established by the libelants themselves while engaged in such combination," etc. The record shows that as to each item of charge there was evidence that the service rendered was worth the price charged, and, as much of the work done by the different scows was similar in character and quantity, many of the items of charge are supported by the evidence of several witnesses. The witnesses stated that, in testifying to the value of the services, they did not give consideration to the schedule of prices adopted by the association. The mere fact that in some instances the sum testified to as the fair and reasonable value of a particular service and the price for such service named in the schedule were identical is not controlling. It is not inconceivable that men may combine together to ask a perfectly fair price for their work. Co-operation does not necessarily imply extortion. We have not seen nor heard the witnesses, but the commissioner, who had that opportunity, reached the conclusion that their estimate of value was more nearly correct than that of the single witness called by claimant. As the record discloses evidence to support his finding upon this disputed question of fact, the decree should not be reversed on the ground assigned. Appellant's brief refers to an instance where the tug Andrews charged five dollars for towing the dredge from Troy to West Troy, when the regular charge was two dollars, the additional three dollars being charged for the reason that Wiswall (the owner of the dredge) had previously towed with a boat outside of the association. There

is no persuasiveness, however, to any such evidence, in view of the fact that the owner of the Andrews is not included among the libelants; that no claim on behalf of that tug is made; and that whatever charges are made, testified to, and allowed for towing from Troy to West Troy and vice versa are at the rate of two dollars only.

3. It is further assigned as error that judgment was rendered against the sureties for this claimant in the original libel wherein the Hudson River Tug-Boat Association was libelant, and that such sureties were discharged by the proceeding allowing the libel to be amended and the libelants to proceed therein individually. It appears, however, that the Hudson River Tug-Boat Association was not the libelant in the original libel. Twenty different persons were individually libelants, of whom eight have been removed by amendment, having no claims. In other words, the suit began with twenty individual libelants, and ended with twelve of them, the obligation of the sureties being to answer the decree of the court. The assignment of error is unsound.

4. The last assignment of error (the sixth) is the general one that judgment should have been given for claimants instead of for libelants. It has been disposed of with the other assignments.

The decree of the district court is affirmed, with interest and costs.