DENNEHY et al. v. McNULTA et al.

(Circuit Court of Appeals, Seventh Circuit. May 2, 1898.)

No. 424.

1. CONTRACTS — ILLEGAL CONDITION AS CONSIDERATION — EFFECT OF NONPER-FORMANCE.

Rebate vouchers issued by a distilling company to customers, by which it promised to refund a certain sum per gallon on their purchases at the end of six months, on condition of their purchasing exclusively from the company during that time, cannot be enforced, either at law or in equity, where the condition has not been performed, though such condition be illegal, as in restraint of trade; there being no other consideration for the promise. 23 C. C. A. 415, 77 Fed. 700, affirmed.

2. MONOPOLIES — ILLEGAL COMBINATION TO CONTROL BUSINESS — LEGALITY OF CONTRACTS.

One purchasing liquors from an illegal combination of distillers, which controls the market and prices, though impelled thereto by business needs and policy, enters into the contract voluntarily, and cannot retain the goods, and recover the price paid, or any part of it, either on the ground that the combination was illegal, or the price excessive. 23 C. C. A. 415, 77 Fed. 700, affirmed.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

The appellants filed claims for allowance against the funds in court in the consolidated causes against the Distilling & Cattle-Feeding Company, of which sufficient description appears in the case of Distilling Co. v. McNulta (decided by this court Jan. 4, 1897) 46 U. S. App. 578, 23 C. C. A. 415, and 77 Fed. 700.

(1) The claims of Dennehy & Co. were presented by petition in their name, and consisted of 91 written instruments, called rebate certificates or vouchers, issued by the Distilling & Cattle-Feeding Company to Charles Dennehy & Co., aggregating the sum of $5,238.23. The instruments are of various dates, numbers, and amounts, and in form as follows, with appropriate insertions in the blank spaces, respectively:

"Peoria, Ill., ———, 189-. No. ———

"Subject to the conditions named herein, and for the purpose of securing the continuous patronage of the within-named purchaser, the successors and assigns of the same, for its products, the ——— Distilling & Cattle-Feeding Co., six months from the date of this purchase voucher, will pay to Charles Dennehy & Co., of Chicago, purchaser, ——— dollars ($———), being a rebate of seven cents per proof gallon on ——— proof gallons of the Distilling and Cattle-Feeding Company's product purchased this day. This voucher will be valid and payable only upon condition that the above-named purchaser, the successors and assigns of the same, from the date of this voucher to the time of its payment, shall have bought their supply of such kinds of goods as are produced by the Distilling and Cattle-Feeding Company, and all compounds thereof, exclusively of one or more of the dealers named on the back thereof, until further notified, and shall also have subscribed to the certificate on the back hereof.

"Distilling and Cattle-Feeding Co.,
"By J. B. Greenhut, President.

"Not transferable nor negotiable.

"When due, forward to the German-American National Bank of Peoria, Ill., where this voucher is payable without exchange or other charge."

Printed upon the back is the following indorsement: "It is hereby certified that from the date of this voucher. to the maturity thereof the within-named purchaser, and the successors and assigns of the same, have purchased all of their supply of such kind of goods, and their compounds, as are produced by the Distilling and Cattle-Feeding Co.. exclusively from one or more of the dealers named hereon." Appended thereto is a list of 61 dealers or distillers referred to, variously located throughout the United States.

(2) The petition of Moses Salomon sets up that he is the assignee of sundry judgments rendered in justices' courts against the Distilling & Cattle-Feeding Company, and also the holder of vouchers on which said judgments were rendered; but it appeared, and was undisputed, that appeals from the judgments were perfected and pending, whereby the judgments became ineffective; and thereupon the petitioner introduced 47 certificates or vouchers issued to Stein Bros., of various dates, numbers, and amounts, aggregating the sum of $3,-604.64, and similar in form and tenor to the instrument above described, except that in a portion thereof the rebate was named at "five cents per proof gallon," instead of seven cents, as recited in the sample form, and the words, "Not transferable nor negotiable," do not appear, from the record, to have been printed or stamped thereon.

It is not claimed that the payees or holders in either case complied in any respect with the conditions named in the voucher. On the contrary, it appears, and is conceded, that there was neither compliance nor attempt to perform the condition. It further appears that no interest is in fact asserted by either of the payees named in the vouchers; but that (1) the Dennehy & Co. vouchers were indorsed in blank, without recourse, by that corporation, delivered to the United States Distilling Company, and were subsequently delivered to one G. E. Jones, for whose benefit, as finally divulged, the claim was filed in the name of the original payees; and (2) that the vouchers issued to Stein Bros. were by them indorsed payable to the order of one Joseph Wolf, without recourse, and by the latter indorsed in blank, and delivered to the petitioner, Salomon, an attorney at law, under an arrangement that Salomon should bear all expenses, and receive one-half of any amount realized.

The hearing upon the claims was before a special master, who reported to the circuit court "the testimony and evidence, with his conclusions thereon." Aside from the matters above recited, voluminous testimony was introduced on behalf of the claimants, directed to showing that the Distilling & Cattle-Feeding Company, as organized and conducted, was a combination of a large percentage

of the distillers of the country,—asserted to be 85 per cent. thereof,—constituting an illegal trust, monopolizing and controlling the product of the country in that line to the extent of nearly 90 per cent.; that the system of rebate vouchers in evidence was entered into and designed to carry out and secure the purposes of the monopoly; that, through this control of the major share of distillery products, it was deemed a business necessity on the part of Dennehy & Co., Stein Bros., and other dealers throughout the country, to make all their purchases in that line from the distributors of the combination: or, as stated in the argument of their counsel, it became "impracticable and detrimental to their trade to buy liquors elsewhere," in the face of the monopoly; but it also appears that an independent and accessible supply existed in fact. The conclusions of the special master were against the allowance of the claims in both cases. Exceptions filed by each claimant were subsequently heard and overruled in the circuit court, the report of the special master in each case was confirmed, and final decree entered accordingly. The opinion thereon, by Showalter, Circuit Judge, is reported in 77 Fed. 265.

Moses Salomon, for appellants.

Levy Mayer, for appellees.

Before WOODS and JENKINS, Circuit Judges, and SEAMAN, District Judge.

SEAMAN, District Judge, after stating the case as above, delivered the opinion of the court.

Passing technical objections to consider this controversy upon the merits, it is manifest that no liability is chargeable against the Distilling & Cattle-Feeding Company, except upon one or the other of the following propositions: (1) That the conditions contained in the vouchers may either be ignored or set aside for illegality, and the promise thus segregated may be enforced without performance of the conditions; or (2) that in the original transactions money was paid to this corporation under circumstances from which the law raises an implied promise of repayment, within the doctrine of money had and received, which, ex æquo et bono, belongs to the party by whom it was so paid. Under either head, the mere fact that the corporation, as one of the contracting parties, may constitute an unjust monopoly, and that its general business is illegal,—a status apparently held in Distilling & Cattle-Feeding Co. v. People, 156 Ill. 448, 41 N. E. 188,—cannot serve, ipso facto, to create default or liability on its contracts generally; nor can such fact be invoked collaterally to affect in any manner its independent contract obligations or rights. National Distilling Co. v. Cream City Importing Co., 86 Wis. 352, 355, 56 N. W. 864.

1. Can a cause of action be predicated upon the written agreement? In substance, the instrument promises that, "subject to the conditions named," and "for the purpose of securing the continuous patronage" of the purchaser as payee thereof, the Distilling & Cattle-Feeding Company will, in six months after date, pay to the purchaser the amount named, "being a rebate of seven [or five] cents per proof gallon" on a purchase that day made, and to be "valid and payable only on condition" that the purchaser named, his successors and assigns, from date of the voucher to the time of payment, "shall have bought their supply of such goods as are produced" by the promisor corporation "exclusively from one or more of the dealers named on the back," and "shall also have subscribed to the certificate on the back." The terms are une-

quivocal that the promise was not to bind the corporation unless the promisee performed the acts stated. In other words, the obligations of the contract are dependent upon a condition precedent; and there can be no default by the promisor without performance of the condition, unless waived or excused by acts or conduct on the part of the promisor. Under the contract in question, compliance with the conditions was neither obstructed on the one side, nor attempted on the other, and it is manifest that no right of action at law has accrued in favor of the promisees. In view of this status, the appellants contend that the claims are entitled to equitable consideration, because (1) they are presented in the course of a proceeding in equity; and (2) this condition is affixed to the contract as a means by which to carry out the illegal purposes of a monopoly operating in restraint of trade, and for that reason a court of equity should either disregard the condition, or strike it out. But assuming, for the argument, that both premises are well taken, no relief can then be granted for enforcement of the contract, as no consideration is left to support the promise. The condition is the sole consideration for the promise, and, if that is illegal, the promise falls with it. Even if the consideration were invalid only in part, the same result would follow, the promise being indivisible. Bish. Cont. §§ 74, 487; 3 Am. & Eng. Enc. Law, 886; Greenh. Pub. Pol. rule 24. No element of the contract as actually made between the parties remains to be enforced. A court of equity cannot make a new contract for them, nor can it destroy the substance of the one which they have entered into, and at the same time preserve the contract obligation. Recovery upon the vouchers in question, with the conditions unfulfilled, would have that effect, and must be denied in equity as well as in law. Klein v. Insurance Co., 104 U. S. 88, 91.

2. The second and final proposition calls for the application of the equitable doctrine on which assumpsit may be maintained as for money had and received, and the right to this remedy must be found in the original transactions and circumstances under which the payments were made to the Distilling & Cattle-Feeding Company. These were, on their face, simple contracts of bargain and sale, and the only payments referred to were made upon distinct purchases of supplies at stipulated prices. The goods were legitimate subjects of trade, and there was no illegality in the nature of the contract of purchase. There is no pretense that the purchaser was either deceived or mistaken. On the contrary, his purchase, so far as appears, was in exact compliance both with his expectations and his bargain. It is not asserted that fraud entered directly into any of these transactions; nor is there impeachment for any cause, except upon the hypothesis for which the appellants contend, by way of collateral attack namely: (1) That an unlawful combination enabled the seller to control and arbitrarily fix prices upon nine-tenths of the distillery products of the country; (2) that the exigencies of business on the part of the purchasers constrained them to deal with this combination; (3) that the amount named in the vouchers as rebate was beyond the fair price, and a distinct addition to the price which was imposed and withheld to secure continuance of the trade. And upon the line of testimony introduced as tending in some measure to show this state

of facts the appellants rest their right to recover the alleged excess in the prices paid, as money paid under constraint or duress. Without considering whether the testimony referred to was either admissible under the issues, or of the effect alleged, and conceding, for the purposes of the case, the truth of each of the above propositions of fact, there can be no recovery of the money so paid, for the reason that no actual duress is shown, and no element exists to make the payment involuntary or compulsory. Radich v. Hutchins, 95 U. S. 210, 213; Lonergan v. Buford, 148 U. S. 581, 590, 13 Sup. Ct. 684; 6 Am. & Eng. Enc. Law, 57, tit. "Duress," and cases cited. In Radich v. Hutchins, supra, it is said:

"To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary, * * * there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving payment, over the person or property of another, from which the latter has no other means of immediate relief than by making the payment. As stated by the court of appeals of Maryland, the doctrine established by the authorities is that 'a payment is not to be regarded as compulsory, unless made to emancipate the person or property from an actual and existing duress imposed upon it by the party to whom the money is paid.' Mayor, etc., v. Lefferman, 4 Gill, 425; Brumagim v. Tillinghast, 18 Cal. 265; Mays v. Cincinnati, 1 Ohio St. 268."

In the case at bar neither the persons nor the property of the purchasers were within the physical control of the sellers when the contracts of purchase were entered into, or when the payments were made thereupon, and in the eye of the law the transactions were voluntary. At the utmost, the circumstances here assumed show an urgent need for the goods to keep up their stock and continue in trade, and to that end a business necessity to make their purchases from the illegal combination, because it so far controlled the market that they had reason to fear disastrous results if supplies were sought elsewhere. However urgent this need may have seemed for preservation of business interests, it cannot operate to change the payment made upon such purchases from the voluntary character impressed by the contract into the involuntary payment which may be reclaimed. Emery v. City of Lowell, 127 Mass. 138, 140; Custin v. City of Viroqua, 67 Wis. 314, 320, 30 N. W. 515, and cases cited; 6 Am. & Eng. Enc. Law, 71. As the purchaser elected to take the goods upon the terms fixed, and with all the circumstances in mind, his rights must be measured by the contract, and not by the motives which influenced either party to enter into it. If the seller took advantage of his necessities, and made the price excessive, it would be subversive of the well-established rules which govern contract rights to receive testimony of such circumstances, to so modify the terms agreed upon, and allow recovery of the excess in price. In the case of an injurious combination of the nature asserted here, the remedy is by well-recognized and direct proceedings; but one who voluntarily and knowingly deals with the parties so combined cannot, on the one hand, take the benefit of his bargain, and, on the other, have a right of action against the seller for the money paid, or any part of it, either upon the ground that the combination was illegal, or that its prices were unreasonable. We are of opinion that no foundation is established for either set of claims, and the decree thereupon is affirmed.