## CHICAGO WALL PAPER MILLS v. GENERAL PAPER CO.

(Circuit Court of Appeals, Seventh Circuit.   August 11, 1906.)

### No. 1,260.

1. MONOPOLIES—UNLAWFUL COMBINATION—EFFECT ON COLLATERAL CONTRACT.

A contract for the sale of merchandise is not rendered illegal by the fact that the selling corporation is a trust or monopoly organized in violation of law, either federal or state; the contract of sale being collateral and having no direct relation to the unlawful scheme or combination.

[Ed. Note.—For cases in point, see vol. 35, Cent. Dig. Monopolies, § 16.]

2. SAME—ENFORCEMENT OF SALE CONTRACT—ILLINOIS STATUTE.

Sections 1 and 2 of the Illinois anti-trust law of June 11, 1891 (Laws 1891, pp. 206, 207), prohibit any pool or combination between persons or corporations to fix the price or limit the production of any article or commodity. Section 4 (page 207) provides for the punishment of a violation of section 1 by fine or imprisonment. Section 5 (page 208) makes any contract in violation thereof void, and section 6 (page 208) provides that "any purchaser of any article or commodity from any individual, company, or corporation transacting business contrary to any provision of the preceding sections of this act shall not be liable for the price or payment of such article or commodity, and may plead this act as a defense to any suit for such price or payment." *Held*, that sections 4, 5, and 6 provide cumulative or alternative penalties for a violation of sections 1 and 2, and have no other purpose or effect; that sections 1 and 2 can have no extraterritorial effect, and hence the fact that a seller of merchandise in Illinois is a corporation formed for the prohibited purposes cannot be pleaded as a defense in an action to recover the price unless such corporation was organized in Illinois and was therefore unlawful under the statute.

[Ed. Note.—For cases in point, see vol. 35, Cent. Dig. Monopolies, § 16.]

In Error to the Circuit Court of the United States for the Northern District of Illinois.

The suit is in assumpsit brought by the General Paper Company, a Wisconsin corporation, against the Chicago Wall Paper Mills, a corporation organized under the laws of Illinois, to recover something over $4,000 for certain wall paper sold and delivered by the plaintiff corporation to the defendant below in the year 1905. The declaration contains the common counts.

To this declaration the defendant interposed the general issue, and also 16 pleas. These pleas set up with great elaboration a defense under the "Anti-Trust Law," so called, of Illinois. The facts set up in the pleas appear more at large in the opinion of the court. Thereafter, by leave of court, another plea was interposed, numbered 17, which substantially reproduced the averments of the 16 pleas, and also set out certain alleged "confessions" of the plaintiff company made since the suit was brought, which are certain answers made under oath in response to interrogatories which the officers of nonresident corporations were compelled to make pursuant to an act of the General Assembly of Illinois, entitled, "An act to regulate the admission of foreign corporations for profit to do business in the state of Illinois." Laws 1891, p. 206. The plea of the general issue was withdrawn, and the defense was rested solely upon the 17 special pleas.

Demurrers were interposed to each of the said 17 pleas, which demurrers were sustained by the Circuit Court, and judgment nihil dicit was rendered in favor of the plaintiff and against the defendant below for the agreed price of the paper, and thereupon the case was brought to this court by writ of error.

The sections of the statute that are material are as follows:

"Pools, Trusts and Combines Prohibited.

"Section 1. Be it enacted by the people of the state of Illinois, represented in the General Assembly: If any corporation organized under the laws of this or any other state or country, for transacting or conducting any kind of business in this state, or any partnership or individual or other association of persons whosoever, shall create, enter into, become a member of or a party to any pool, trust, agreement, combination, confederation or understanding with any other corporation, partnership, individual, or any other person, or association of persons, to regulate or fix the price of any article of merchandise or commodity, or shall enter into, become a member of or a party to any pool, agreement, contract, combination or confederation to fix or limit the amount or quantity of any article, commodity or merchandise to be manufactured, mined, produced or sold in this state, such corporation, partnership or individual or other association of persons shall be deemed and adjudged guilty of a conspiracy to defraud, and be subject to indictment and punishment as provided in this act.

"Sec. 2. It shall not be lawful for any corporation to issue or to own trust certificates, or for any corporation, agent, officer or employees, or the directors or stockholders of any corporation, to enter into any combination, contract or agreement with any person or persons, corporation or corporations, or with any stockholder or director thereof, the purpose and effect of which combination, contract or agreement shall be to place the management or control of such combination or combinations, or the manufactured product thereof, in the hands of any trustee or trustees, with the intent to limit or fix the price or lessen the production and sale of any article of commerce, use or consumption, or to prevent, restrict or diminish the manufacture or output of any such article."

(Section 3 imposes a fine upon the corporation, firm or association.)

"Sec. 4. Any president, manager, director or other officer or agent or receiver of any corporation, company, firm or association, or any individual found guilty of a violation of the first section of this act, may be punished by a fine of not less than two hundred dollars ($200), nor to exceed one thousand dollars ($1,000), or be punished by confinement in the county jail not to exceed one year, or both, in the discretion of the court before which such conviction may be had.

"Sec. 5. Any contract or agreement in violation of any provision of the preceding sections of this act shall be absolutely void.

"Sec. 6. Any purchaser of any article or commodity from any individual, company or corporation transacting business contrary to any provision of the preceding sections of this act shall not be liable for the price or payment of such article or commodity, and may plead this act as a defense to any suit for such price or payment.

"Sec. 7. The fines hereinbefore provided for may be recovered in an action of debt in the name of the people of Illinois. If, upon the trial of any cause instituted under this act to recover the penalties as provided for in section 3, the jury shall find for the people, and that the defendant has been before convicted of the violations of the provisions of this act, they shall return such finding with their verdict, stating the number of times they find defendant so convicted and shall assess and return with their verdict the amount of the fine to be imposed upon the defendant in accordance with said section 3. Provided, that in all cases under this act, a preponderance of evidence in favor of the people shall be sufficient to authorize a verdict and judgment for the people.

"Sec. 8. It shall be the duty of the prosecuting attorneys in their respective jurisdictions, and the Attorney General, to enforce the forgoing provisions of this act, and any prosecuting attorney of any county, securing a conviction under the provisions of this act, shall be entitled to such fee or salary as by law he is allowed for such prosecution. When there is a conviction under this act, the former shall be entitled to one-fifth of the fine recovered, which shall be paid to him when the same is collected. All fines recovered under the provisions of this act shall be paid into the county treasury of the county

in which the suit is tried, by the person collecting the same, in the manner now provided by law to be used for county purposes."

Approved June 11, 1891.  Laws 1891, pp. 206–208.

The rulings of the court below in sustaining the demurrers to each of said 17 pleas, are assigned as errors.

Almon W. Bulkley, for plaintiff in error.

William Brace, for defendant in error.

Before BAKER and SEAMAN, Circuit Judges, and QUARLES, District Judge.

QUARLES, District Judge (after stating the facts).  We deem it unnecessary to consider the question of pleading with respect to the technical character of the seventeenth plea, whether it should be construed as a puis darrein continuance, and whether, therefore, it supplants all defenses theretofore interposed, because the seventeenth plea substantially embodies all the material averments of the first 16 pleas, and is sufficient to raise the vital question of law upon which this case must turn.  The material facts set out in the several pleas may be put in brief concrete form as follows:  The plaintiff corporation is alleged to have been organized on the 26th day of May, 1900, in the state of Wisconsin, for the purpose, as stated in its charter, of acting as exclusive sales agent for the paper and paper products thereafter to be produced by 21 certain manufacturing corporations located in the states of Wisconsin and Michigan, engaged in the paper industry; that its board of directors consisted of representatives of the 21 paper mills, so that for trade purposes there was a practical amalgamation of the 21 producing companies; that thereupon, on the same day, pursuant to such confederation, the plaintiff corporation became the exclusive sales agent of all such paper mills, with exclusive power to determine the extent of the output, and to fix prices arbitrarily, and that by such confederation, competition between the 21 producing corporations was stifled, and the plaintiff corporation as such sales agent, put in control of 90 per cent. of the paper and paper products manufactured west of the Alleghany Mountains; that immediately after such plaintiff corporation had been so organized and equipped, it came to the city of Chicago, complied with the requirements of the local law, secured a place of business, and has since that time continued to handle and sell such combined product of the 21 mills in Wisconsin, Michigan, Illinois, and other Western states, as contemplated by the agreement of confederation; that the alleged combination is violative of the statute of Illinois, entitled "An act to provide for the punishment of persons, copartners or corporations forming pools, trusts and combines, and mode of procedure and rules of evidence in such cases," approved June 11, 1891, in force July 1, 1891 (Laws 1891, p. 206).

It cannot be successfully contended that the contract in suit falls within the sanction of the fifth section.  The contract thereby denounced as void is plainly one which directly contravenes the earlier sections; one in which the trust takes root, or by which the illicit scheme is organized.  The defendant below purchased the paper in the ordi-

nary course of business. It was a stranger to the alleged unlawful combination. The sale of the merchandise had no direct relation to the prohibitions of sections 1 and 2. The same distinction has been drawn under the federal anti-trust act (Hopkins v. United States, 171 U. S. 578, 592, 19 Sup. Ct. 40, 43 L. Ed. 290; Anderson v. United States, 171 U. S. 604, 615, 19 Sup. Ct. 50, 43 L. Ed. 300), and this court has several times held that contracts founded upon a good consideration are collateral to the unlawful scheme or combination and not tainted thereby. Dennehy v. McNulta, 86 Fed. 825, 30 C. C. A. 422, 41 L. R. A. 609; Star Brewery Co. v. United Breweries, 121 Fed. 713, 58 C. C. A. 133; Harrison v. Glucose Co., 116 Fed. 304, 53 C. C. A. 484, 58 L. R. A. 915.

The real defense tendered by the several pleas is bottomed upon section 6, and it becomes material to analyze this part of the enactment. It will be noted at the outset that the structure of sections 5 and 6, is almost identical. Both hinge upon "violation of any provisions of the preceding sections of this act." Section 4 metes out punishment to officers of the offending corporation for any violation of section 1. So here there are three distinct consequences that flow from infringement of earlier sections: Under section 4, fine and imprisonment; under section 5, the avoidance of contract; and under section 6, denial of civil remedy in the courts. They partake of the same nature. They are penal inflictions of different kinds, consequent upon a single transgression. The violation contemplated in either case must be such as will sustain the penalty imposed by either section. In other words, if the combination effected in Wisconsin constituted such a violation of section 1 as to warrant the exclusion of the plaintiff company from the courts of Illinois under section 6, then a direct proceeding might have been instituted under section 4 to punish the officers of such offending corporation.

The penal character of section 6 sufficiently appears upon its face. To debar trading corporations from all redress in the courts is a drastic infliction. The same conclusion as to the nature of the section is reached by a legal inference. The title of the statute deals only with punishments and the manner of their infliction. If, therefore, section 6 were of a different character, it would contravene section 13 of article 4 of the Constitution of Illinois and be of no effect. It is fundamental and elementary that the General Assembly of Illinois has no jurisdiction to provide any punishment for an act done outside of the territorial limits of the state. It cannot project its public policy into another sovereignty. The dereliction charged against the plaintiff below by the several pleas inheres in its contract relations with the 21 producing companies whereby, as claimed, it was intended to suppress competition, restrict the output, and arbitrarily fix the price of paper. This illicit combination culminated in the organization of the plaintiff corporation and the agreement by which it was to officiate as exclusive sales agent. Thereby the combine became an accomplished fact which, for aught that appears, may not have infringed the public policy of Wisconsin. All these things happened five years before the contract in suit, and took place within the state of Wisconsin, before

the plaintiff entered upon any business in Chicago. Since that time nothing has happened, certainly nothing within the state of Illinois, of which section 1 takes cognizance. It is argued that the Illinois statute is unconstitutional, and that a combination formed in one state to control prices in another state affects interstate commerce and therefore is not subject to state regulation. We are not concerned with the constitutionality of this act, if it can, in no event, be applicable to the case at bar. The Supreme Court of Illinois has had occasion to interpret this statute, and the doctrine which it lays down is decisive of the issues here.

In People v. Butler Street Foundry Co., 201 Ill. 236, 66 N. E. 349, the court say:

"It is fundamental that the Legislature of this state is powerless to pass an enactment making an act committed in a foreign state punishable in that state, or the Legislature of a foreign state to pass an enactment to make an act committed in this state a crime punishable in this state. It is therefore evident that a violation of the statute above set forth in this state cannot be punished as an original offense in a foreign state, and that the immunity afforded by the statute is complete against a prosecution under the law of the other states of the Union. The anti-trust statute of 1891 has no extraterritorial effect. While its terms may be broad enough to include trusts, pools, combines, etc., formed with parties residing outside of this state, the courts, in construing it, must necessarily confine it to those matters upon which the General Assembly has power to act, viz., trusts, pools, combinations, etc., formed within the state of Illinois. In the construction of the statute the courts will exclude from the operation thereof subjects or classes upon which the state Legislature has no power to legislate, though comprehended within the general terms of the act, unless the different parts of the statute are so connected that they cannot be separated without destroying the evident intention of the Legislature. * * * If the statute be confined to its legitimate constitutional scope its proper construction only requires the affidavit to state whether or not the corporation upon whose behalf it is made had violated the statute by performing some one or more of the acts therein prohibited within the state of Illinois, and would not include, but would exclude all acts which would connect it with any trust, pool, combination, etc., formed outside of the state, and which would violate the anti-trust statute of the United States. * * * In making the affidavit the affiant is only required to take into consideration the acts of the corporation while engaged in business wholly within the state, and if, in connection with that business, it has not been connected with any trust, pool, or combination within the state, or otherwise violated the Illinois anti-trust statute, he can truthfully make the affidavit to that effect, although the corporation at the same time, in its business outside the state, has been connected with trusts, pools, combinations, etc., in violation of the United States anti-trust statute; that being a matter exclusively within the jurisdiction of the United States and over which the state has no control and to which the statute of this state does not apply. * * * We conclude, therefore, that the officer making the affidavit, and the corporation in whose behalf the same is made, are fully protected by the statutory immunity from a prosecution by any other state or by the federal authorities."

We are reminded that section 6 was not specifically involved in that case. This is immaterial. The discussion above recited was vital to the very questions before the court, so that the opinion is authoritative and applies with full force to every portion of the act.

There is nothing decided in Coal Co. v. People, 214 Ill. 421, 73 N. E. 770, which is inconsistent with the doctrine of the earlier case.

It may be conceded that if a foreign corporation enter into a combine within the state of Illinois which is forbidden by the statute, it must stand upon the same footing as a domestic corporation, and be liable to all the pains and penalties of the act, without regard to the place of its origin. It is therefore apparent that a direct proceeding could not be sustained to subject the officers of the General Paper Company to the penalties of section 4 for an alleged transgression occurring in Wisconsin. The same reasoning must be fatal to a defense based upon section .6.

We adopt and follow the conclusion of the Supreme Court of the state. ● It results, therefore, that the Illinois anti-trust act, so called, is not available as a defense to this action, and the judgment of the Circuit Court is affirmed.