BESSIRE & CO. *v.* CORN PRODUCTS MANUFACTURING COMPANY.

[No. 7,178.    Filed March 16, 1911.]

1. APPEAL.—*Briefs.*—*Omissions by Appellant.*—*Supply by Appellee.* —Where appellant's brief omits, but appellee's brief supplies, the necessary parts of the record for the consideration of the questions sought to be presented, such questions will be considered. p. 302.

2. PLEADING.—*Answer.*—*Partial.*—A partial answer addressed to an entire complaint is bad.  p. 302.

3. PLEADING.—*Set-Off.*—*Admissions.*—A plea of set-off for an amount alleged to be due to the defendant under the contract sued upon, admits the execution of such contract.  p. 303.

4. CONTRACTS.—*Restraint of Trade.*—*Trusts.*—*Answer.*—An answer purporting to show that the contract sued upon constitutes a trust and combination in restraint of trade, must allege that such contract is unlawful.  p. 303.

5. CONTRACTS.—*Restraint of Trade.*—*Trusts.* — *Answer.*—An answer that the plaintiff's predecessor, at the time of the execution of the contract sued upon, was a combination formed for the purpose of controlling the manufacture and the sale of the goods contracted for, and that the plaintiff purchased all of such predecessor's property, good-will and choses in action, and assumed all its business, liabilities and contracts, is bad, where it is not alleged that the plaintiff is a trust or combination in restraint of trade, or that such purchase was for an unlawful purpose.  p. 303.

6. CONTRACTS.—*Sales.*—*Restraint of Trade.*—*Illegal Conditions.*— *Rebates.*—*Consideration.*—Where a contract provides that if the vendee shall buy exclusively from the vendor for a certain time such vendor will give to the vendee a rebate, the consideration for the rebate is the agreement for exclusive purchase, and if such agreement is void the agreement to pay the rebate is unsupported by any consideration, and therefore falls.  p. 303.

7. CONTRACTS.—*Unilateral.*—*Promise.*—*Performance.*—A proposal that if a vendee shall purchase from the vendor all of the materials needed during the year 1908, the vendor, at the end of such year will give the vendee a certain rebate, constitutes a contract only upon performance of the conditions by the vendee. p. 303.

8. CONTRACTS.—*Rebates.*—*Validity.*—There is nothing morally nor legally wrong in a contract to pay a rebate.  p. 304.

9. CONTRACTS.—*Breach.—Answer.—Monopolies.*—An answer, in an action for goods sold and delivered under a contract, that the plaintiff had a monopoly of such goods and that the defendant could not obtain them elsewhere, is bad. p. 306.

10. APPEAL.—*Presentation of Questions.—Answers.—Averments.*— The absence of direct and specific averments in an answer will not prevent its consideration on appeal, where its purpose clearly appears. p. 307.

11. CONTRACTS.—*Actions on.—Defenses.—Monopolies.*—The fact that the plaintiff corporation was organized and is acting in violation of the state and federal anti-trust laws constitutes no defense to an action by it to enforce its contracts for goods sold and delivered, the duty of enforcing such laws being upon the state and federal prosecuting officers, unless the plaintiff cannot establish his case without the aid of the illegal acts. pp. 308, 309.

12. MONOPOLIES.—*Dissolution.—Contracts.*—Ordinarily the validity of a combination or trust can be determined only in a direct proceeding instituted by the state or federal government for that purpose, or in an action growing out of the contract under which the alleged monopoly exists. p. 308.

From Superior Court of Marion County (75,706); *Vinson Carter,* Judge.

Action by the Corn Products Manufacturing Company against Bessire & Co. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Pickens, Cox & Kahn,* for appellant.

*W. H. H. Miller, C. C. Shirley* and *Samuel D. Miller,* for appellee.

ADAMS, J.—Appellee, a corporation, brought this action against appellant, also a corporation, to recover for goods sold to and appropriated by appellant. The complaint is in two paragraphs. The first paragraph is based on an order and confirmation in writing, setting out the terms of the contract of sale. The original order called for 180 barrels of glucose, 120 barrels of which were shipped and paid for according to contract, and this action is to recover for the remaining sixty barrels shipped pursuant to said order on January 8, 1908.

The second paragraph is upon a common count for goods sold and delivered. A bill of particulars is filed therewith, showing the sum of $918.06 to be due to appellee, which amount is alleged to be unpaid.

Appellant answered in four paragraphs. The first admits the purchase of the goods as averred in the complaint, but alleges that on November 14, 1906, the Glucose Sugar Refining Company submitted to appellant a proposition in writing (setting it out), wherein it was announced that if appellant and its successors would continue to buy, from said company or its successors, all the glucose and grape sugar required for its establishment during the remainder of the year 1906 and the entire year of 1907 the Glucose Sugar Refining Company would pay an amount equal to ten cents per hundred pounds on all shipments of said products "which shall have been made by this company from July 1, 1906, to December 31, 1906, and paid for by you."

It is further averred that appellant accepted said proposition and conformed thereto in all its dealings with said Glucose Sugar Refining Company; that afterwards said company sold its entire business to appellee; that appellant continued to purchase from appellee all the glucose and grape sugar required by it in its business; that thereafter on December 24, 1907, appellee confirmed the proposition offered by its predecessor and extended it for another year under the same terms, except that the number of cents "per hundred pounds" was left blank; that on January 23, 1908, appellant was informed by appellee that the amount to be paid would be "fifteen cents per hundred pounds" on the goods named; that all of the glucose and grape sugar purchased by appellant was purchased from appellee, under the contract, and constituted its acceptance of the proposition; that during the year 1907 appellant purchased from appellee, under and pursuant to said con-

tract, 438,672 pounds of glucose and grape sugar, and that appellant is entitled to receive fifteen cents per hundred pounds, or the sum of $658, for which appellant asks judgment, and asks that the amount be set off and recouped against any amount that may be found due to appellee.

The second paragraph of amended answer alleges that appellee is a combination and conspiracy in restraint of trade and commerce between the states, being an organization formed to monopolize and control the manufacture, sale and trade in glucose and grape sugar within the United States, and is an illegal organization operating in violation of law; that appellee sold to appellant the goods sued for at an exorbitant price, the latter being compelled to buy from appellee; that appellant is a large consumer of such goods, and at the time of the purchase of the goods could not do otherwise than to make trade arrangements with appellee, setting out propositions as in the first paragraph; that the contract formed by said propositions and their acceptance is unlawful and in restraint of trade, and all the goods sued for in this action were purchased under and pursuant thereto, and not otherwise.

The third paragraph of said answer alleges that appellee is a trust, a combination and conspiracy, organized to monopolize the manufacture and sale of, and trade in, glucose and grape sugar in the United States, in violation of the laws of the State of Indiana and of the United States, and has no legal capacity to sue.

The fourth paragraph of answer alleges that appellee is an unlawful combination of the Glucose Sugar Refining Company and a number of other firms and corporations, naming them, which, before the formation of appellee trust, were independent and competing manufacturing concerns, manufacturing the goods sued for in the complaint; that the times, places and steps of the organization and combination of said independent companies into appellee corpora-

tion are unknown to the appellant, and such information is in the possession of appellee and secretly guarded by it and prevented from becoming public.

With said paragraph of answer are filed a number of interrogatories, the purpose and object being to trace the formation of appellee company back to constituent companies, operated independently.

The court sustained the motion to strike out the interrogatories, and also sustained the demurrers to each paragraph of answer, to which appellant excepted; and, refusing to plead further, the court rendered judgment in favor of appellee.

These rulings are separately assigned as error and are relied upon for reversal.

It is insisted by appellee that no question is presented in this court, on account of the failure of appellant to set out in its brief the answers and demurrers, or the substance thereof, as provided by the fifth clause of

1. rule twenty-two of this court. It has been held that the purpose of the rule is to relieve the court of the labor of searching the record to ascertain the errors relied upon, but that the rule is satisfied if, by the joint act of the parties, it has been substantially complied with.

In this case the brief of appellee has supplied that part of the record omitted from the brief of appellant, so that the omissions will be disregarded, and the questions raised will be considered. *Roberts* v. *Fort Wayne Gas Co.* (1907), 40 Ind. App. 528; *Chicago, etc., R. Co.* v. *Wysor Land Co.* (1904), 163 Ind. 288; *Tipton Light, etc., Co.* v. *Dean* (1905), 164 Ind. 533; *Chicago, etc., R. Co.* v. *Walton* (1905), 165 Ind. 642.

The theory upon which the first paragraph of answer is drawn is not clear. It purports to answer the whole complaint, and as such is insufficient. If it is filed as

2. an answer of set-off, there can be no denial of the contract of purchase, for it is admitted by the an-

swer.   If it seeks to set up as a defense that appellee is a trust and combination in restraint of trade, there is no averment of its unlawful character.   It is averred that the Glucose Sugar Refining Company was at the time the first communication was received a combination and organization embodying all the glucose manufacturing companies and plants in the United States, being formed for the purpose of controlling the manufacture thereof and the market therefor, and that in the year 1907 appellee purchased all the properties, rights, good-will and choses in action belonging to said Glucose Sugar Refining Company, and took over all of its business, assumed all of its liabilities, and agreed to carry out its contracts.   But there is no averment in this paragraph that the appellee was a trust or combination in restraint of trade, or that the purchase of the properties of the Glucose Sugar Refining Company was made for any unlawful purpose.

It is suggested by appellant's counsel that the agreement to pay the rebate is lawful, but the conditions attached are unlawful, and that the rebate should be allowed on the goods purchased, without requiring appellant to continue purchasing from appellee for another year before receiving payment.

The infirmity of this contention lies in the fact that the condition represents the consideration for the promise, and, if the condition is illegal, the promise supported by it also fails.

The leading inquiry, however, raised by the first paragraph of answer is: Does the offer of appellee and the acceptance by appellant, as set out, constitute any agreement?   Divested of expressions of good-will, the proposition is that a certain per cent, to be thereafter determined, computed on the total value of the goods purchased by appellant for the year 1907, will be paid by appellee as a rebate out of the profits for the year 1907,

after the close of the year 1908, on condition that appellant continue to purchase and pay for the entire supply of glucose and grape sugar used in its establishment during the year 1908. We do not find in this proposition any element of mutuality, which is an indispensable part of an agreement. It could not be enforced against appellant, and it was the privilege of appellant to abandon the proposal at any time and purchase goods elsewhere. Nor could the proposition be enforced against appellee until full performance is shown. It simply remains an open offer, until, by performance of its terms, appellee became bound to pay the rebate agreed upon.

It is averred that appellant continued to purchase from plaintiff all of the glucose and grape sugar required in the conduct of its business until the time of the bringing of this action, which is shown to have been in March, 1908. As the terms of the proposition required appellant to continue to purchase during the entire year 1908, it affirmatively appears that no right to recover the rebate is shown in this answer.

There is nothing legally nor morally wrong in a promise to pay a rebate. The Supreme Court of our own State has held in the case of *Cleveland, etc., R. Co.* v. *Closser* (1890), 126 Ind. 348, 9 L. R. A. 754, 22 Am. St. 593, that, even in the case of a common carrier, an agreement to pay a rebate is not illegal at common law. A case in point is *Dennehy* v. *McNulty* (1898), 86 Fed. 825, 30 C. C. A. 422, 41 L. R. A. 609, in which case the court said: "In substance, the instrument promises that, 'subject to the conditions named,' and 'for the purpose of securing the continuous patronage' of the purchaser as payee thereof, the Distilling and Cattle-Feeding Company will, in six months after date, pay to the purchaser the amount named, 'being a rebate of 7 (or 5) cents per proof gallon' on a purchase that day made, and to be 'valid and payable only on condition' that the purchaser named, his successors and

assigns, from date of the voucher to the time of payment, 'shall have bought their supply of such goods as are produced' by the promisor corporation 'exclusively from one or more dealers named on the back,' and 'shall also have subscribed to the certificate on the back.' The terms are unequivocal that the promise was not to bind the corporation unless the promisee performed the acts stated. In other words, the obligations of the contract are dependent upon a condition precedent; and there can be no default by the promisor without performance of the condition, unless waived or excused by acts or conduct on the part of the promisor.''

The case of *United States* v. *Greenhut* (1892), 51 Fed. 213, was for habeas corpus on behalf of a prisoner indicted for violation of the Sherman anti-trust act, the charge being that defendants, in pursuance of a combination to restrain trade, sold their product to dealers under an agreement wherein the dealers were promised a rebate under conditions similar to those set out in the answer in this case. The conditions in that case, however, required the purchasers not only to buy from the trust, but also fixed the price at which the goods must be sold by them. The indictment was held to charge no crime, in that no contract is shown. The court said: ''During that period they bought such products only from certain named dealers in a limited number of states, and sold only at prices fixed by the defendants; but they did so only because they chose to, —because the offer of a rebate to purchasers who would thus conduct their business was inducement operating upon their self-interest. No obligation of any kind constrained them so to do; during that entire period, certainly, no contract restrained them, for there was no contract in existence. They were entirely free to buy from whom they pleased and to sell at any price they chose. The statute does not prohibit the offering of special inducements to such pur-

chasers as shall make all their purchases from a single concern, and shall sell only at the prices fixed by it, even though those inducements be so favorable as to accomplish their object. It is not the actual restraint of trade (if such be restraint of trade) that is made illegal by the statute, but the making of a contract in restraint of trade, of a contract which restrains or is intended to restrain trade. It is difficult to understand upon what principle it can be contended that trade is restrained by a contract, when no contract exists." The same indictment was considered in the cases of *In re Corning* (1892), 51 Fed. 205, and *In re Greene* (1892), 52 Fed. 104, and the same conclusion reached.

It is also averred in the first paragraph of answer that, at the time said purchases were made, the appellee had a monopoly of the manufacture of the goods purchased, and defendant could not secure them elsewhere. This averment does not render the paragraph sufficient. A similar claim was made in *Dennehy* v. *McNulty, supra,* and upon this point the court said: "At the utmost, the circumstances here assumed show an urgent need for the goods to keep up their stock and continue in trade, and to that end a business necessity to make their purchases from the illegal combination, because it so far controlled the market that they had reason to fear disastrous results if supplies were sought elsewhere. However urgent this need may have seemed for preservation of business interests, it cannot operate to change the payment made upon such purchases from the voluntary character impressed by the contract into the involuntary payment which may be reclaimed. *Emery* v. *City of Lowell* [1879], 127 Mass. 138, 140; *Custin* v. *City of Viroqua* [1886], 67 Wis. 314, 320, 30 N. W. 515, and cases cited; 6 Am. and Eng. Ency. Law 71. As the purchaser elected to take the goods upon the terms fixed, and with all the circumstances in mind, his rights must be measured by the contract, and

not by the motives which influenced either party to enter into it."

The second paragraph of answer alleges that appellee is a combination and conspiracy in restraint of trade and commerce between the states, formed to monopolize and control the manufacture and sale of glucose and grape sugar; that the contract for the sale of the goods in suit is void, and therefore no liability arose thereon.

The third paragraph characterizes appellee, as in the second, and alleges that the conspiracy was to monopolize the trade in its product in violation of the anti-trust laws of the United States and the State of Indiana, and that it has no legal capacity to sue. The fourth paragraph is substantially the same as the third, except that the names of the constituent companies are set out.

The sufficiency of each paragraph is questioned by demurrer for want of facts to constitute a cause of defense.

10. While in each paragraph of answer there seems to be a notable absence of direct and specific averments, the purpose of the answers clearly appears, and the questions presented will be considered.

Appellant has invoked the common law, the anti-trust law of Indiana, and the federal act of July 2, 1890, known as the Sherman law, in support of the illegality of the contract and sale forming the basis of this action. For the purposes of this opinion it may be assumed that appellee is a trust and combination in restraint of trade, existing in violation of the common law, and of the federal and state laws. The answers under consideration do not dispute the indebtedness shown by the complaint, or that it is justly due and unpaid, but, as a defense, say that appellee is a trust and combination in restraint of trade, and by reason thereof appellant is relieved from the payment of a debt which would otherwise be collectible.

The inquiry first arises: Has appellant, in the absence of an express statute authorizing such a defense, a right,

in a collateral proceeding, to question the legality of appellee, or, can the legal status of appellee be determined in any but a direct proceeding brought for that purpose?

The duty of enforcing the anti-trust laws of the State of Indiana is enjoined upon the Attorney-General and the prosecuting attorneys. There is no provision in the anti-trust acts of this State which authorizes a defense such as that interposed by appellant in this case. Nor has there been any construction of these anti-trust acts by the Supreme Court or this court. We must therefore look to the decisions of other states and the decisions of the federal courts.

In the case of *LaFayette Bridge Co.* v. *City of Streator* (1900), 105 Fed. 729, the court said: "The defendant is, in this suit, attempting to avail itself in a collateral proceeding of a defense based on a fact which should be determined in a direct proceeding. In other words, before a defendant can evade the payment of the purchase price of commodities, actually received, on the ground that the seller is a trust or combination in restraint of trade, in contravention of the statute, there should be an adjudication of a competent tribunal, in a direct action instituted for that purpose, determining that such seller is a trust or combination in the sense contemplated by the statute."

The general rule is that the validity of a combination or trust should be determined in a direct action instituted for the purpose, or in actions growing out of or connected with the unlawful contract under which such trust or combination exists. Noyes, Intercorporate Relations §369; *Olmstead* v. *Distilling, etc., Co.* (1895), 73 Fed. 44; *Camors-McConnell Co.* v. *McConnell* (1905), 140 Fed. 412.

The rule to be applied in determining the independent character of an obligation held by an unlawful combination is stated with clearness in the case of *In re The Charles*

*E. Wiswall* (1898), 86 Fed. 674, 30 C. C. A. 339, in which it is said: "The test, whether a demand connected with an illegal transaction is capable of being enforced at law, is whether the plaintiff requires the aid of the illegal transaction to establish his case. If he cannot open his case, without showing that he has broken the law, a court will not assist him. But if he does not claim through the medium of the illegal transaction, but upon a new contract bottomed on independent consideration, he may recover."

It follows, that where the sale is in noway connected with the illegal character of the selling corporation, but one made in the regular course of business, resting upon a valid and independent consideration, it is no defense to an action for the goods sold that the plaintiff is an unlawful combination, since the sale is collateral to the illegality of the combination. *Connolly* v. *Union Sewer Pipe Co.* (1902), 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679; *National Distilling Co.* v. *Cream City Importing Co.* (1893), 86 Wis. 352, 56 N. W. 864, 39 Am. St. 902; *Chattanooga Foundry Pipe Works* v. *City of Atlanta* (1906), 203 U. S. 390, 27 Sup. Ct. 65, 51 L. Ed. 241; Williston, Sales p. 1132; *Hadley Dean Plate Glass Co.* v. *Highland Glass Co.* (1906), 143 Fed. 242, 74 C. C. A. 462; *Pennsylvania Co.* v. *Bay* (1905), 138 Fed. 203; *Metcalf* v. *American School Furn. Co.* (1903), 122 Fed. 115; *Barton* v. *Mulvane* (1898), 59 Kan. 313, 52 Pac. 883; Cooke, Combinations (2d ed.) §169; 2 Eddy, Combinations §1216; *Harrison* v. *Glucose Sugar Refining Co.* (1902), 116 Fed. 304, 53 C. C. A. 484, 59 L. R. A. 915.

In the leading case of *Connolly* v. *Union Sewer Pipe Co.*, *supra*, the questions arising on this appeal were considered at length, the opinion of the court being delivered by Mr. Justice Harlan. The holding is that a defense of the character here interposed is not good under either the common law or the Sherman anti-trust law. And for the same reasons we may add that the defense is not good under

the Indiana anti-trust laws. The United States Supreme Court approves the rule announced in the case of *Dennehy* v. *McNulty, supra,* by quoting the following statement: "In the case of an injurious combination of the nature asserted here, the remedy is by well-recognized and direct proceedings; but one who voluntarily and knowingly deals with the parties so combined cannot, on the one hand, take the benefit of his bargain, and, on the other, have a right of action against the seller for the money paid, or any part of it, either upon the ground that the combination was illegal, or that its prices were unreasonable."

Referring to the facts in the case of *Connolly* v. *Union Sewer Pipe Co., supra,* at page 551 the court said: "The buyer could not refuse to comply with his contract of purchase upon the ground that the seller was an illegal combination which might be restrained or suppressed in the mode prescribed by the act of congress; for congress did not declare that a combination illegally formed under the act of 1890 should not, in the conduct of its business, become the owner of the property which it might .sell to whomsoever wished to buy it. So that there is no necessary legal connection here between the sale of pipe to the defendants by the plaintiff corporation and the alleged arangement made by it with other corporations, companies and firms. The contracts under which the pipe in question was sold were, as already said, collateral to the arrangement for the combination referred to, and this is not an action to enforce the terms of such arrangement. That combination may have been illegal, and yet the sale to the defendants was valid." Again in the same case the court said: "If the act of congress ,expressly authorized one who purchased property from a combination organized in violation of its provisions, to plead, in defense of a suit for the price, the illegal character of the combination, that would present an entirely different question. But the act contains no such provision."

In the case of *National Distilling Co.* v. *Cream City Im-*

*porting Co., supra,* which was an action to recover the price of goods sold and delivered, defendant filed an answer similar to that filed in this case. The supreme court of Wisconsin, in passing upon the sufficiency of the answer, said: "The first defense does not deny any allegation of the complaint, but the substance of it is that the sale and delivery of the goods in question to the defendant was void as against public policy, because the vendor was at the time a member of an unlawful trust or combination formed to unlawfully interfere with the freedom of trade and commerce, and in restraint thereof, and to accomplish the ends therein set forth. * * * Conceding, for the purposes of this case, that the trust or combination in question may be illegal, and its members may be restrained from carrying out the purposes for which it was created by a court of equity in a suit on behalf of the public, or may be subject to indictment and punishment, there is, nevertheless, no allegation showing or tending to show that the contract of sale between the plaintiff and defendant was tainted with any illegality or was contrary to public policy. The argument, if any the case admits of, is that, as the plaintiff was a member of the so-called 'trust' or 'combination,' the defendant might voluntarily purchase the goods in question of it at an agreed price, and convert them to its own use, and be justified in a court of justice in its refusal to pay the plaintiff for them, because of the connection of the vendor with such trust or combination. The plaintiff's cause of action is in no legal sense dependent upon or affected by the alleged illegality of the trust or combination, because the illegality, if any, is entirely collateral to the transaction in question, and the court is not called upon in this action to enforce any contract tainted with illegality, or contrary to public policy. The mere fact that the plaintiff is a member of a trust or combination created with the intent and purposes set forth in the answer will not disable or prevent it in law from selling goods within or affected by the

provisions of such trust or combination, and recovering their price or value. It does not appear that it had stipulated to refrain from such transactions. A contrary doctrine would lead to most startling and dangerous consequences.''

The supreme court of Michigan in the case of *International Harvester Co.* v. *Eaton* (1910), 127 N. W. (Mich.) 695, followed the principle declared in the foregoing cases The court said: ''Assuming, as contended, that the alleged combination was illegal if tested by the principles of the common law, still it would not follow that the defendant could refuse to pay for goods bought by him under special contract with plaintiff. The illegality of such combination and 'trust' would not prevent the plaintiff corporation from selling goods that it obtained even from its constituent companies or either of them. It could pass title by sale to any one desiring to buy, and the buyer could not justify a refusal to pay for what he bought and received by proving that the seller had previously, in the prosecution of its business, entered into an illegal combination with others in reference generally to the sale of articles or products.''

In the State of Illinois, section six of the anti-trust act provides that the purchaser of goods from an unlawful combination shall not be liable for the price of the goods so purchased, and may plead the act as a defense to any action to recover such price. It was held, however, in the case of *Chicago Wall Paper Mills* v. *General Paper Co.* (1906), 147 Fed. 491, 78 C. C. A. 607, that the Illinois statute can have no extraterritorial effect, and where the selling combination was not organized under the laws of the State of Illinois the statute cannot be pleaded as a defense. In that case the general principle is announced that a sale of merchandise by a trust or monopoly, organized in violation of law, either state or federal, is not illegal where the sale is collateral and bears no direct relation to the unlawful combination.

Appellant urges upon our consideration the case of *Continental Wall Paper Co.* v. *Louis Voight & Sons Co.* (1909), 212 U. S. 227, 29 Sup. Ct. 280, 53 L. Ed. 486, wherein the defendant successfully resisted the payment of a large claim in favor of plaintiff, upon the ground that the latter was a combination in restraint of trade. An examination of the facts in that case will at once disclose that a case is presented very different from the case of *Connolly* v. *Union Sewer Pipe Co., supra.* A striking circumstance is that Mr. Justice Harlan delivered the opinion of the court in both cases, and in distinguishing the latter case the court said: ''The case now before us is an entirely different one. The Continental Wall Paper Company seeks, in legal effect, the aid of the court to enforce a contract for the sale and purchase of goods which, it is admitted by the demurrer, was in fact and was intended by the parties to be based upon agreements that were and are essential parts of an illegal scheme. We state the matter in this way, because the plaintiff, by its demurrer, admits, for the purpose of this case, the truth of all the facts alleged in the third defense. It is admitted by the demurrer to that defense that the account sued on has been made up in execution of the agreement that constituted or out of which came the illegal combination formed for the purpose and with effect of both restraining and monopolizing trade and commerce among the several states. The present suit is not based upon an implied contract of the defendant company to pay a reasonable price for goods that it purchased, but upon agreements, to which both the plaintiff and the defendant were parties, and pursuant to which the accounts sued on were made out, and which had for their object, and which it is admitted had directly the effect, to accomplish the illegal ends for which the Continental Wall Paper Company was organized. If judgment be given for the plaintiff the result, beyond all question, will be to give the aid of the court in making effective the illegal agreements that constituted the for-

bidden combination. These conditions make it evident that the present case is different from the Connolly case. [*Connolly* v. *Union Sewer Pipe Co., supra.*]''

The more recent case of *Boatman's Bank* v. *Fritzlen* (1909), 175 Fed. 183, follows the principle declared in the case of *Connolly* v. *Union Sewer Pipe Co., supra,* and the cases herein cited. Referring to the case of *Continental Wall Paper Co.* v. *Louis Voight & Sons Co., supra,* the court said: ''The plaintiff was a combination formed and existing in violation of the federal anti-trust act. Defendant was a member of the unlawful combination. The contract in that case was declared unlawful and nonenforceable because brought by the unlawful combination itself against a member thereof on a contract growing out of and connected with the unlawful association of the defendant with the plaintiff.'' The distinction is clear when measured by the test herein announced. In the case of *Continental Wall Paper Co.* v. *Louis Voight & Sons Co., supra,* plaintiff could not open its case without showing that it had broken the law, and that it was relying upon an illegal transaction with defendant as constituting its right to recover. In the case at bar there is no intimation that appellant was a part of the unlawful combination, or that the purchase of the goods in suit was made in furtherance of an unlawful purpose. Whether considered as interstate commerce or as governed by the laws of Indiana, the transaction forming the basis of this suit is independent of any illegal design, and, in the absence of an express statute authorizing a defense such as here interposed, it cannot, in reason or upon authority, be held good. There was no error in sustaining the demurrers to the answers, and it follows that there was no error in sustaining the motion to strike out the interrogatories.

The judgment is affirmed.