(No. 5742.   December 18, 1931.)

FOX FILM CORPORATION, a Corporation, Appellant, v. TRI–STATE THEATRES, a Corporation, Respondent.

[6 Pac. (2d) 135.]

Hawley & Worthwine, Walter G. Bell and Leo McCarty, for Appellant.

440

Cox, Martin & Ware, for Respondent.

McNAUGHTON, J.—This is an action by the Fox Film Corporation against Tri-State Theatres in damages for breach of contract. The contract involved evidences a form of agreement and combination pursuant to which the motion picture business has since May 1, 1928, been carried on throughout the United States. A copy of the contract is attached to the complaint and is relied upon except it is alleged that the arbitration clause (section 19 of the contract) has been eliminated. It is claimed that clause has been declared in restraint of trade and illegal, in an action against a like general contract brought by the Attorney General of the United States against the Paramount Famous Lasky Corporation, but it is alleged that the balance of the contract was held to be and is legal and binding. The action by the Attorney General of the United States involving a like general contract will be referred to in this opinion as the original contract. The rights of the parties in the action are dependent upon whether or not in legal effect the whole contract involved in the original action was avoided or only the nineteenth section thereof. The legal effect of the original action is brought into this case by plaintiff's complaint and its declaration or conclusion as to its effect on the contract. These allegations are in the nature of legal con-

clusions but we treat them as legal declarations to be taken for what they are worth and not as admitted by demurrer.

Section 19 of the contract is as follows:

"Nineteenth: The parties hereto agree that before either of them shall resort to any court to determine, enforce or protect the legal rights of either hereunder, each shall submit to the Board of Arbitration (established or constituted pursuant to the Rules of Arbitration filed with the American Arbitration Association, 342 Madison Avenue, New York City, bearing date of May 1st, 1928, and identified by the signatures of the Contract Committee appointed at the 1927 Motion Picture Trade Practice Conference a copy of which will be furnished to the exhibitor upon request) in the city wherein is situated the exchange of the Distributor from which the Exhibitor is served or if there be no such Board of Arbitration in such city then to the Board of Arbitration in the city nearest thereto (unless the parties hereto agree in writing that such submission shall be made to a Board of Arbitration located in another specified city) all claims and controversies arising hereunder for determination pursuant to the said Rules of Arbitration and the rules of procedure and practice adopted by such Board of Arbitration.

"The parties hereto further agree to abide by and forthwith comply with any decision and award of such Board of Arbitration in any such arbitration proceeding, and agree and consent that any such decision or award shall be enforceable in or by any court of competent jurisdiction pursuant to the laws of such jurisdiction now or hereafter in force; and each party hereto hereby waives the right of trial by jury upon any issue arising under this contract, and agrees to accept as conclusive the findings of fact made by any such Board of Arbitration, and consents to the introduction of such findings in evidence in any judicial proceeding.

"In the event that the Exhibitor shall fail or refuse to consent to submit to arbitration any claim or controversy arising under this or any other Standard Exhibition Contract which the Exhibitor may have with the Distributor or any other distributor or to abide by and forthwith comply

with any decision or award of such Board of Arbitration upon any such claim or controversy so submitted, the Distributor may, at its option, demand, for its protection and as security for the performance by the Exhibitor of this and all other existing contracts between the parties hereto, payment by the Exhibitor of an additional sum not exceeding $500 under each existing contract, such sum to be retained by the Distributor until the complete performance of all such contracts and then applied, at the option of the Distributor, against any sums finally due or against any damages determined by said Board of Arbitration to be due to the Distributor, the balance, if any to be returned to the Exhibitor; and in the event of the Exhibitor's failure to pay such additional sum within seven (7) days after demand, the Distributor may by written notice to the Exhibitor suspend service hereunder until said sum shall be paid and/or terminate this contract.

"In the event the Distributor shall fail or refuse to consent to the submission of any claim or controversy arising under this or any other Standard Exhibit Contract providing for arbitration which the Distributor may have with the Exhibitor, or to abide by and forthwith comply with any decision or award of such Board of Arbitration upon any such claim or controversy so submitted, within the number of days specified in Article Twenty-First opposite the name of the city in which such Board of Arbitration is located, the Exhibitor may at his option terminate this and any other existing contract between the Exhibitor and the Distributor by mailing notice by registered mail within two (2) weeks after such failure or refusal, and in addition the Distributor shall not be entitled to redress from such Board of Arbitration upon any claim or claims against any Exhibitor until the Distributor shall have complied with such decision, and in the meanwhile the provisions of the first paragraph of this Article Nineteenth shall not apply to any such claim or claims.

"Any such termination by either party, however, shall be without prejudice to any other right or remedy which the

party so terminating may have by reason of any such breach of contract by the other party.

"The provisions of this contract relating to arbitration shall be construed according to the law of the State of New York."

The breach claimed is the refusal on the part of the defendant to be bound by the contract and to be bound to exhibit and pay for certain motion pictures as stipulated in the contract. The measure of damages claimed is the contract price. There are five causes of action but the gist of each is as above outlined.

The defendant demurred. The demurrer was sustained and judgment was rendered dismissing the action. The appeal is from the judgment. Error is predicated on the action of the court in sustaining the demurrer. The demurrer was sustained on the theory that the whole contract as an executory contract is illegal and unenforceable.

The contention on which the appellant bases its case is the claim that, "the arbitration clause is separable from the other parts of the contract and its illegality neither affects the remainder of the contract nor relieves the defendant from its obligation to perform the legal covenants to receive and pay for motion pictures."

While respondent contends that the complaint is demurrable for other reasons, we think reliance is based mostly upon the claim that the whole contract was adjudged illegal in the original suit brought by the United States. And that an action will not lie to require either party to execute it nor will an action lie for damages for refusing to carry its provisions into effect.

We are convinced that a clause of a contract may be of a nature severable from the rest of the contract and its illegality not affect the legal part. (*Municipal Securities Corp. v. Buhl Highway District,* 35 Ida. 377, 208 Pac. 233.) The serious difficulty in this case is the difference of opinion held as to the legal effect upon the whole contract resulting from the decision in the original action, to wit: *United States v. Paramount Famous Lasky Corp.,* 34 Fed. (2d) 984, af-

firmed in *Paramount Famous Lasky Corp. v. United States,* 282 U. S. 30, 75 L. ed. 145, 51 Sup. Ct. 42, 44.

Some confusion in this matter is occasioned by a portion of the decree entered in that case. The decree is not before us. What purports to be a short excerpt has been incorporated into an opinion by a state supreme court. (*Fox Film Corp. v. Buchanan,* 17 La. App. 285, 136 So. 197.) And in the opinion of a federal court. (*Paramount Famous Lasky Corp. v. Nat. Theatre Corp.,* 49 Fed. (2d) 64, 65.)

This portion of the decree has, we think, inclined these courts to the view that only the arbitration clause was declared illegal and in restraint of trade, notwithstanding that suit, or at least one charge thereunder was pursuant to and in enforcement of the Sherman Anti-Trust Act.

In *Paramount Famous Lasky Corp. v. National Theatre Corp., supra,* the court said in commenting on the case of *United States v. Paramount Famous Lasky Corp., supra:*

"The United States brought suit in the District Court of the United States for the Southern District of New York, attacking the contract in question or a similar one on the ground that it was in violation of the Sherman Anti-Trust Act (15 U. S. C. A., §§ 1–7, 15). In an able opinion, Judge Thacher of that court held the arbitration clause of the contract to be unlawful as being in violation of the Sherman Anti-Trust Act (*United States v. Paramount Famous Lasky Corporation,* 34 Fed. (2d) 984), and entered a decree enjoining the Paramount Famous Lasky Corporation, plaintiff here, from acting under the arbitration clause in the contract sued on. The opinion and decree of the District Court was affirmed by the Supreme Court of the United States (*Paramount Famous Lasky Corp. v. United States,* 282 U. S. 30, 51 Sup. Ct. 42, 75 L. ed. 145). In the decree, however, the court clearly shows that its action was directed at the arbitration clause alone, and was not intended to affect the rest of the contract, and, among other things, the decree provided: 'Nothing contained in this decree shall be construed as prohibiting any defendant . . . . from performing and/or continuing to perform, or enforcing and/or continuing to enforce, by any lawful means, any contractual

obligation, the performance or enforcement of which is consistent with the provisions of this decree.' "

In *Fox Film Corp. v. Buchanan,* 17 La. App. 285, 136 So. 197, 198, the supreme court of Louisiana, commenting on Judge Thacher's decision in the Paramount Famous Lasky Corporation case, said:

"But he did not declare or decree that the entire contract was stricken with nullity because of the inclusion of this illegal provision. On the contrary, article 3 of the decree specifically provided:

" 'Nothing contained in this decree shall be construed as prohibiting any defendant or any member of any defendant Film Board of Trade from performing and/or continuing to perform, or enforcing and/or continuing to enforce, by any lawful means any contractual obligation the performance or enforcement of which is consistent with the provisions of this decree.'

"Reading the opinion and decree together, it is clear that the court never intended to restrict the right of action to enforce the obligations lawfully assumed in the said uniform contract. The provision for compulsory arbitration is simply a means provided for the enforcement of the obligations of the contract and the fact that the provision has been declared to be illegal does not deprive the parties to the contract of the means provided by law for the enforcement of all the obligations legally assumed. The defendants are enjoined from enforcing the arbitration provision, but nothing in the decree would affect the prosecution of a claim such as the plaintiff herein is asserting against the defendant."

Like decisions influenced by this view are found in *Columbia Pictures Corp. v. Bi-Metallic Inv. Co.,* 42 Fed. (2d) 873, and *Metro-Goldwyn-Mayer Distributing Corp. v. Bijou Theatre Co.,* 50 Fed. (2d) 908.

Out of deference to these decisions we have examined the opinion of Judge Thacher reported in *United States v. Paramount Famous Lasky Corp., supra,* and the opinion in *Paramount Famous Lasky Corp. v. United States, supra,* with care. We cannot escape the conclusion that neither the circuit court nor the supreme court treated the contract in such a restricted manner. We are convinced that the action

against the contract as violating the Sherman Anti-Trust Act was not limited to and did not end with a mere correction or modification of the contract by striking out the arbitration clause, leaving the balance as an untainted agreement.

Section 1 of the Sherman Anti-Trust Act provides:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by a fine not exceeding $5,000, or by imprisonment not exceeding one year, or both said punishments, in the discretion of the court."

The action by the United States against Paramount Famous Lasky Corporation manifestly was against the contract and combination and plan outlined and carried into effect by it. It was not a private suit. It was by the Attorney General for the benefit of the whole trade. True, the evil was largely charged to the arbitration clause. Without that provision perhaps the contract would have been held not offending and legal, but with it the contract and the combination evidenced by it were declared illegal under the Sherman Act. The contract and plan carried into effect by it was the general plan and contract of the motion picture trade. Admittedly it was the same contract, carrying the same purpose, as the contract involved in this action. We think that to the extent that contract was found to offend the Sherman Act, this contract offends; to the extent that contract was illegal, this one is illegal.

Now had the contract in the original action been attacked only on the ground that the arbitration clause was illegal at common law as in restraint of trade, then, perhaps, only that clause would have been considered illegal and blotted out. But in the original action not only was the section attacked as violative of the common law but, as is disclosed by the reported case, also it was charged that the contract was in violation of the Sherman Act. If it was held to be in violation of the Sherman Act, its execution was not only illegal but it constituted a misdemeanor. If the court found

that the contract offended against the Sherman Act we are confident that it did not hold or say that the evil consequent upon such findings might be remedied by merely striking out a clause of the contract.

A careful examination of the opinion by the circuit court, and by the supreme court on appeal, convinces us that in that action this general contract, companion to the one here, and the agreement and combination they evince was adjudged to be in violation of the Sherman Anti-Trust Act and consequently illegal *in toto*.

The nature of the case before Judge Thacher is described as follows:

"In Equity. Suit by the United States against the Paramount Famous Lasky Corporation and others to restrain conspiracy in restraint of trade. Decree for complainant." (This charge apparently was not under the Sherman Anti-Trust Act.)

"In Equity. Suit by the United States under section 4 of the Sherman Anti-trust Act of July 2, 1890 (26 Stats. 209; 15 U. S. C. A., § 4), to enjoin the defendants from further engaging in a conspiracy in restraint of interstate trade and commerce, in violation of section 1 of said Act. (15 U. S. C. A., § 1.)" (Under this branch of the case it is thought the whole contract was annulled.)

The opinion continues:

"The conspiracy charged in this case is predicated upon acts of the defendants in adopting and agreeing to use, and in using exclusively, certain uniform contracts for the lease of motion picture films to theater owners throughout the United States, containing provisions for the determination by arbitration of all claims and controversies arising under said contracts, and in adopting and enforcing by collective action rules governing the procedure and practice to be followed in the arbitration of such claims, and in the enforcement of arbitration awards. It is also alleged that compliance with the arbitration clauses and performance of the awards were enforced by certain supplemental understandings and agreements by some of the defendants, acting as agents, but without the knowledge and against the general instructions of other defendants who were their principals."

From the opinion it appears that the arbitration clause was not only held illegal as in restraint of trade, but also that the restraint is such as violates the Sherman Anti-Trust Act. This seems certain from Judge Thacher's conclusion as follows:

" . . . . By agreement of these distributors exhibitors who were not represented in the adoption of the uniform contracts have been constrained to accept their terms regardless of their wishes and by the compulsory system of arbitration, sanctioned and enforced by the collective action of the distributors, have been constrained to perform the contractual obligations thus assumed. In fairness it cannot be said that the restraint imposed upon these exhibitors is voluntary because they accept and agree to be bound by the contracts. They have none other, because the defendants have agreed that they shall not; and, unless something more than the mere acceptance of all they can get is shown, they must be said to have acted under an involuntary restraint, imposed and continued by the defendants to the end that the contracts shall be signed and their terms obeyed. That such coercive restraint upon the commercial freedom of an exhibitor, who was neither represented nor consulted with reference to the agreement to adopt the standard form of contract, is undue and unreasonable, both at common law and under the Sherman Act, I cannot doubt. Gains resulting from such restraints to the industry as a whole do not in the eyes of the statute justify the vicarious sacrifice of the individual, even for the sake of bigger and better business. A state legislature could not lawfully impose compulsory arbitration upon the motion picture industry. *Wolff Packing Co. v. Court of Industrial Relations of State of Kansas*, 262 U. S. 522, 27 A. L. R. 1280, 43 Sup. Ct. 630, 67 L. ed. 1103. Much less should it be within the power of a combination of practically all the distributors to do so by coercion exercised through control of the available supply of films."

That the arbitration clause itself was not the whole offense, but merely a part of a contract coerced and coercing, seems clear from the court's further observation that:

"Nothing that has been said should be taken in derogation of the right of trade or commercial groups, or of traders generally, to voluntarily impose upon themselves standard forms of agreement which do not unduly restrict competition and thus restrain trade, or to agree that all controversies arising between them shall be settled by arbitration. Such agreements dealing only with the rights of those who execute and intend to be bound by them are normal and usual, and are proper instruments in the lawful conduct of trade. It is only when such agreements are sought to be imposed upon others, regardless of their wishes, by coercive combinations having the power to say 'Take what is offered or get nothing', that they become illegal."

The description of the case heading the opinion on appeal to the supreme court is as follows:

"Appeal by defendants from a decree of the District Court of the United States for the Southern District of New York in a suit to enjoin violation of the Federal Anti-Trust Law through an alleged combination to restrain interstate commerce in motion picture films. Affirmed. . . . .

"The agreement of appellant distributors to contract for the exhibition of motion picture films only on the condition that every exhibitor accept the arbitration provisions of the standard exhibition contract, whereby arbitration and arbitration awards are enforced by collective action of the distributors, constitutes a conspiracy in unlawful restraint of interstate commerce."

To us there seems little doubt about what this whole contract was deemed to have constituted and what happened to it in the supreme court. Mr. Justice McReynolds, speaking for the court, said:

"The record discloses that ten competitors in interstate commerce, controlling 60 per cent of the entire film business, have agreed to restrict their liberty of action by refusing to contract for display of pictures except upon a standard form which provides for compulsory joint action by them in respect of dealings with one who fails to observe such a contract with any distributor, all with the manifest purpose to coerce the exhibitor and limit the freedom of trade.

"The United States maintain that the necessary and inevitable tendency of the outlined agreement and combination (described with greater detail in the opinion below) is to produce material and unreasonable restraint of interstate commerce in violation of the Sherman Act. *Eastern States Retail Lumber Dealer's Assn. v. United States,* 234 U. S. 600, 614, 34 Sup. Ct. 951, 58 L. ed. 1490, 1500, L. R. A. 1915A, 788; *Binderup v. Pathe Exchange,* 263 U. S. 291, 312, 44 Sup. Ct. 96, 68 L. ed. 308, 317. The court below accepted this view and directed an appropriate injunction against future action under the unlawful plan. We agree with its conclusion and the challenged decree must be affirmed."

Had the pictures involved in this case been accepted and used by the exhibitor perhaps then an obligation would have arisen to pay on *quantum meruit.* This thought may have prompted the clauses referred to in Judge Thacher's decree. The discussion in *Columbia Pictures Corp. v. Bi-Metallic Inv. Co., supra, Paramount Famous Lasky Corp. v. National Theatre Corp., supra, Fox Film Corp. v. Buchanan, supra,* and *Metro-Goldwyn-Mayer Distributing Corp. v. Bijou Theatre Co., supra,* seems to be on that theory. But they go further and treat the obligation as for goods sold pursuant to a contract merely invalid in part, and they treat what remains of the contract as a free collateral agreement between an illegal trust and a third person. In this we cannot follow them. We think the contract, at least as alleged, is a part of the illegal combination within the doctrine of *Continental Wall Paper Co. v. Louis Voight & Sons Co.,* 212 U. S. 227, 29 Sup. Ct. 280, 53 L. ed. 486, and *McMullen v. Hoffman,* 174 U. S. 639, 19 Sup. Ct. 839, 43 L. ed. 1117.

██ In this case the contract was executory. The pictures were not received nor is the contract in question a collateral agreement between a trust and a third party. It is the general agreement which in the original case the United States contended and the court held was illegally adopted and was itself coercing, in restraint of interstate commerce in violation of the Sherman Act.

In conclusion, as we understand the law, a contract which is within the prohibition of the Sherman Anti-Trust Act in

whole or in part is not only illegal but its execution is unlawful. The act of executing it is a misdemeanor under the laws of the United States. The complaint here virtually alleges that a part of the contract in suit is illegal as prohibited by the Sherman Anti-Trust Act. If so, its execution was unlawful.

Therefore from the facts pleaded we find as a matter of law that the contract as written and as signed by the parties is a general contract carrying into effect a coercion by an unlawful combination in restraint of trade, and as such has in a proceeding by the government been found to be illegal under section 1 of the Sherman Anti-Trust Act; that the defendant is absolved under the facts pleaded from any liability on account of joining in the unlawful signing of such contract. That defendant was not, by any other act of its, incurred any obligation with regard to the several portions of the contract herein sought to be enforced. That he cannot be required to respond in damages for failing to execute such contract by refusing to take and pay for the films in question.

The judgment must be affirmed, with costs to respondent.

Lee, C. J., and Budge, Givens and Varian, JJ., concur.

### ON PETITION FOR REHEARING.

(December 30, 1931.)

McNAUGHTON, J.—In this case the petition does not come to the real point. In the case of *United States v. Paramount Famous Lasky Corp.*, *supra*, the action was to restrain further use of the contract. It was not an action on the contract. The court held that the contract, including clause 19 as written, was in violation of the Sherman Anti-Trust Act and further held that by striking out that clause the contract would then not offend. In this case, however, the action is on contract. The complaint alleges that the clause was not stricken out; that it was part of the contract as executed, but further alleges that the contract with that clause in it is illegal as in restraint of trade and violative of the Sherman Anti-Trust Act. We have simply

held that if this is so, the contract is not only an illegal contract but was unlawfully executed and therefore unenforceable. That is the main point in the case and the petition for rehearing avoids that point all the way through.

Petition for rehearing denied.

Lee, C. J., and Budge, Givens and Varian, JJ., concur.