[File No. 6053.]

UNITED ARTISTS CORPORATION, a Corporation, Appellant, v. JOHN PILLER, Respondent.

(244 N. W. 20.)

Opinion filed June 30, 1932.

A. F. Greffenius, for appellant.

S. P. Halpern and A. P. Paulson, for respondent.

BURKE, J. The plaintiff in this action is a distributor of motion picture films and the defendant is an exhibitor. The action includes nine separate causes of action on contracts between the plaintiff and defendant, by the terms of which the plaintiff agreed to furnish and the defendant agreed to exhibit the nine pictures contracted for. The defendant breached his contract by refusing to accept the pictures and the plaintiff brought this action to recover on the contract. The case was tried to the court without a jury and the trial judge made findings

of fact and conclusions of law favorable to the defendant and from an order denying a motion for judgment or for a new trial the plaintiff appeals.

The contracts involved are the uniform contracts adopted by the Motion Picture Producers and Distributors of America, Inc., which contract was held, in the case of United States v. Paramount Famous Lasky Corp. (D. C.) 34 F. (2d) 984, to be a violation of § 1 of the Sherman Act (U. S. C. title 15, § 1) and the decision was affirmed in the United States Supreme Court in 282 U. S. 30, 75 L. ed. 145, 51 S. Ct. 42.

Appellant concedes that, that part of the contract providing for arbitration is invalid, but claims that the objectionable part of the contract is separable from the other provisions and that while the provision relating to arbitration is unenforcible, when it is separated from the other provisions there is still a good workable contract upon which he can recover. He is sustained in this position by Columbia Pictures Corp. v. Bi-Metallic Invest. Co. (D. C.) 42 F. (2d) 873; Paramount Famous Lasky Corp. v. National Theatre Corp. (C. C. A. 4th) 49 F. (2d) 64; Fox Film Corp. v. Buchanan, 17 La. App. 285, 136 So. 197; Metro-Goldwyn-Mayer Distributing Corp. v. Bijou Theatre Co. (D. C.) 50 F. (2d) 908.

In the case of Paramount Famous Lasky Corp. v. National Theatre Corp. (C. C. A. 4th) 49 F. (2d) 64, supra, the court said "That the arbitration clause in the contract relating to the distribution of motion picture films sued on had been adjudged unlawful and enjoined by the federal District Court as being in restraint of trade and violative of Sherman Anti-Trust Act (U. S. C. title 15, § 1) and such adjudication was affirmed by the United States Supreme Court and the decree specifically provided that nothing therein should affect the rest of the contract."

This view of the federal decision holding the arbitration clause of the contract invalid is followed in the courts which sustain appellant's contention. The decision does not specifically provide "that nothing therein shall affect the rest of the contract," but does say that "Nothing that has been said should be taken in derogation of the right of trade or commercial groups, or of traders generally, to voluntarily impose upon themselves standard forms of agreement which do not unduly

restrict competition and thus restrain trade; or to agree that all controversies arising between them shall be settled by arbitration. Such agreements dealing only with the rights of those who execute and intend to be bound by them are normal and usual, and are proper instruments in the lawful conduct of trade. It is only when such agreements are sought to be imposed upon others, regardless of their wishes, by coercive combinations having the power to say 'Take what is offered or get nothing,' that they become illegal.

"Upon settlement of the decree the parties may suggest provisions, if such be feasible, under which uniform contracts containing arbitration clauses may be voluntarily adopted by the members of this industry without coercion or other unlawful restraint."

This language means, that it was not the intent of the court to say that the parties could in no case arbitrate but that they might arbitrate so long as it was voluntary and without coercion. In other words, the distributors might get together and adopt a new contract with an arbitration provision which did not offend against the law. The enforceability of the contract against the exhibitor was not involved. He was not a party to the action and his rights under it could not be determined. The action was brought by the United States government, against the distributors only, to enjoin them from operating under a contract in restraint of trade and the court did not undertake to say and did not say that certain parts of the contract were invalid and certain parts valid but did hold that the contract was invalid because of the involuntary coercive arbitration provision.

The vice in the contract, so far as the respondent is concerned, is that it was involuntary. It was not his contract, but the contract of the distributing company. He had a motion picture theater that he had been operating for twenty years. He had to do business with the distributors, who had a monopoly of the distribution of films, if he did business at all. He had to sign their contract, not his contract, but the distributor's contract. He was deprived of the freedom of contract which the law contemplates.

In the case of Vitagraph v. Theatre Realty Co. (D. C.) 50 F. (2d) 907, the court in construing the same contract said "The real defense is to be found in the feature that the plaintiff is in a position to control the trade of its customers. It says, in effect, you must sign this con-

tract on the dotted line or go out of business. A contract includes the thought of the freedom of the contracting parties. It would be farcical to speak of freedom under such conditions. The proposition is, therefore, simply that a plaintiff cannot enforce a contract which is void because condemned by the law." In that case the theater company received and used the films and the inference from the opinion is that it might recover on the quantum meruit, but not on the contract. In the instant case the respondent did not use the films, the contract was executory.

In the case of Majestic Theatre Co. v. United Artists Corp. (D. C.) 43 F. (2d) 991, the court said, "The reasoning of the defendants is that if the plaintiff, with such knowledge of the conditions of the industry, voluntarily, with its eyes open, enters into contracts which provide for certain behavior under certain conditions, then, if such behavior ensues in strict accordance with the contracts, the plaintiff cannot complain. The weakness in this defense is that the contract on the plaintiff's part is not voluntary." As Judge Thacher said in United States v. Paramount Famous Lasky Corp. (D. C.) 34 F. (2d) 984 (quoting the same part of Judge Thacher's decision as we have quoted).

In the case of Metro-Goldwyn-Mayer Distributing Corp. v. Bijou Theatre Co. (D. C.) 50 F. (2d) 908, the court said in reference to the decision of Paramount Famous Lasky Corp. v. National Theatre Corp. (C. C. A. 4th) 49 F. (2d) 64 "It has long been the custom of this circuit for courts of first instance to follow the decision of a Court of Appeals, unless convinced that it was clearly wrong. As applied to the facts in this case, that decision leads to such an unjust result as to throw doubt upon its soundness, and to indicate strongly that the arbitration provisions were not a separable part of the contract. While I should have reached the opposite conclusion, the decision does not, however, seem to me so clearly wrong as to warrant my refusal to follow it. I therefore hold that the arbitration provisions do not bar the plaintiff from maintaining the present suit."

The case of Fox Film Corp. v. Tri-State Theatres, 51 Idaho, 439, 6 Pac. (2d) 135, was an action to recover damages for breach of contract and the court discusses and analyzes at length the different cases

on the subject, and holds that an action could not be maintained upon the contract.

The latest case is the Fox Film Corp. v. C. & M. Amusement Co. 58 F. (2d) 337, District Court of the Southern District of Ohio, in which it is held that the uniform contract containing the arbitration feature is inseparable from the other provisions of the contract. It is well settled that contracts of sale have been upheld when it appears that the contract was not inherently unlawful and *was only collateral to the illegal contract.* Connolly v. Union Sewer Pipe Co. 184 U. S. 540, 46 L. ed. 679, 22 S. Ct. 431; Wilder Mfg. Co. v. Corn Products Ref. Co. 236 U. S. 165, 59 L. ed. 520, 35 S. Ct. 398, Ann. Cas. 1916A, 118; A. B. Small Co. v. Lamborn & Co. 267 U. S. 248, 69 L. ed. 597, 45 S. Ct. 300; A. B. Small Co. v. American Sugar Ref. Co. 267 U. S. 233, 69 L. ed. 589, 45 S. Ct. 295, supra, and Bell v. Lamborn (C. C. A. 4th) 2 F. (2d) 205; Milliken-Tomlinson Co. v. American Sugar Ref. Co. (C. C. A. 1st) 9 F. (2d) 809; Higgins v. California Prune & Apricot Growers (C. C. A. 2d) 16 F. (2d) 190.

In the case of The Charles E. Wiswall v. Scott (C. C. A. 2d) 42 L.R.A. 85, 30 C. C. A. 339, on page 342, 57 U. S. App. 179, 86 Fed. 671, the court said: "The test, whether a demand connected with an illegal transaction is capable of being enforced at law, is whether the plaintiff requires the aid of the illegal transaction to establish his case. If he cannot open his case, without showing that he has broken the law, a court will not assist him. But if he does not claim through the medium of the illegal transaction, but upon a new contract bottomed on independent consideration, he may recover." Swan v. Scott, 11 Serg. & R. 155; Armstrong v. Toler, 11 Wheat. 258, 6 L. ed. 468; McBlair v. Gibbes, 17 How. 236, 15 L. ed. 134.

In the case of Continental Wall Paper Co. v. Louis Voight & Son, 212 U. S. 227, 53 L. ed. 486, 29 S. Ct. 280, a number of manufacturers in different states organized a selling company, through which their entire output was sold in accordance with an agreement between themselves, to sell to such persons only as entered into a purchasing agreement, by which their sales were restricted, and it was held that the effect of this contract was to restrain and monopolize interstate and foreign trade and that the wall-paper company could not recover on the contract for goods sold, received and accepted under the contract.

In this case Judge Harlan states very clearly the distinction between such a case and the case of Connolly v. Union Sewer Pipe Co. 184 U. S. 540, 46 L. ed. 679, 22 S. Ct. 431, supra. He shows clearly that in the Connolly Case the purchaser was not a party to the illegal transaction. He took the goods at an agreed price and nothing more. The purchase of the goods was not illegal nor a part of any plan or scheme that the law condemned, but was wholly collateral to and independent of the agreement under which the combination had been previously formed by others in Ohio and to which he was an entire stranger. He then shows that in the wall-paper case the account upon which a recovery is sought was made with the knowledge of both the seller and buyer with direct reference to and in execution of a certain agreement under which an illegal combination represented by the seller was organized; that the plaintiff comes into court admitting that it is an illegal combination, whose operations restrain and monopolize commerce and trade and then says: "We hold that such a judgment cannot be granted without departing from the statutory rule, long established in the jurisprudence in this country and England, that a court will not lend its aid, in any way, to a party seeking to realize the fruits of an agreement that appears to be tainted with illegality, although the result of applying that rule may sometimes be to shield one who has got something for which as between man and man he ought, perhaps, to pay."

To the same effect is the case of McMullen v. Hoffman, 174 U. S. 639, 654, 669, 43 L. ed. 1117, 1123, 1128, 19 S. Ct. 839. In this case the court discusses the authorities at great length.

A series of separate acts, each of which taken alone is not objectionable where the direct object and result of all is in restraint of trade, is illegal. Monarch Tobacco Works v. American Tobacco Co. (1908; C. C. Ky.) 165 Fed. 774; United States v. Reading Co. (C. C.) 183 Fed. 427, reversed in part in 226 U. S. 324, 57 L. ed. 243, 33 S. Ct. 90; U. S. C. title 15, § 1, note 38. Contracts lawful on their face are illegal if in furtherance of a combination in itself illegal and the conspiracy need not be established by direct evidence, but may be inferred from the facts and circumstances. McNear v. American & B. Mfg. Co. 42 R. I. 302, 107 Atl. 242.

To defeat a contract as illegal because of its being in restraint of

trade, it must appear that the contract is directly connected with the unlawful purpose and not merely collateral thereto. Camors-McConnell Co. v. McConnell (C. C.) 140 Fed. 412; Hadley Dean Plate Glass Co. v. Highland Glass Co. (C. C. A. 8th) 74 C. C. A. 462, 143 Fed. 242; Northwestern Consol. Mill. Co. v. Callam (C. C. Mich.) 177 Fed. 786.

Parties to a contract in restraint of trade are not exempt from the doctrine of *in pari delicto* on the theory that they acted in good faith and without intent to violate the law. Harriman v. Northern Securities Co. 197 U. S. 244, 49 L. ed. 739, 25 S. Ct. 493–505, affirmed in (C. C. A. 3d) 67 C. C. A. 245, 134 Fed. 331.

From these decisions it is clear that an action can not be maintained on a contract which is directly connected with an unlawful purpose. On the other hand, an action may be maintained on a collateral contract against a party, who is a stranger to the illegal combination and not connected in any way with it.

In the instant case the contracts sued on are not collateral. It is the uniform contract declared to be illegal by the Federal courts.

Section 1 of the Sherman Act, U. S. C. title 15, § 1, is a penal statute which declares that "every contract in restraint of trade or commerce among the several states or with foreign nations is declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy shall be deemed guilty of a misdemeanor and on a conviction thereof shall be punished by a fine not exceeding $5,000.00 or imprisonment not exceeding one year or by both said punishments in the discretion of the court."

This highly penal statute declares that *every contract* in restraint of trade is illegal. The federal courts have held the contracts in suit are illegal in restraint of trade and in violation of said statute, and an action therefore cannot be maintained thereon.

The judgment of the trial court must be and is affirmed.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE and BURR, JJ., concur.