UNITED ARTISTS CORPORATION, Appellant, vs. ODEON BUILDING, INC., and another, Respondents.

*May 12—June 6, 1933.*

152

For the appellant there were briefs by *C. A. Markham* of Beaver Dam and *Mason & Priestley* of Madison, and oral argument by *T. N. Burke* of Madison and *Vroman Mason.*

For the respondents there was a brief by *Bender, Trump, McIntyre & Freeman* of Milwaukee, and oral argument by *Walter H. Bender.*

NELSON, J.   The question for decision is whether the allegations of the answer, assumed upon demurrer to be true, constitute a defense to the plaintiff's alleged cause of

action. The plaintiff sued to recover the full amount of certain rentals for films and records for which defendant Yeo had contracted but which defendant Odeon Building, Inc., had refused to accept.

It appears that the contracts entered into were the standard exhibition contracts, adopted by the moving-picture industry and used at that time by practically all distributors of films and records. Each of the contracts contained the arbitration clause recited in the margin. That particular clause was held to be illegal and to evidence a conspiracy in restraint of trade in violation of the Sherman Anti-Trust Act, sec. 1 (15 USCA, § 1), in *United States v. Paramount Famous Lasky Corp.* 34 Fed. (2d) 984, affirmed in *Paramount Famous Lasky Corp. v. United States,* 282 U. S. 30, 51 Sup. Ct. 42. That case was a suit in equity brought

by the United States to restrain an alleged conspiracy in restraint of trade, and to enjoin the defendant named and numerous other defendants from further engaging in such conspiracy. The conspiracy charged was predicated upon acts of the defendants in adopting and agreeing to use and in using exclusively certain uniform contracts for the leasing of motion-picture films to theater owners throughout the United States containing provisions for the determination, by arbitration, of all claims and controversies arising under said contracts, and in adopting and enforcing by collective action certain rules governing the procedure and practice to be followed in the arbitration of such claims. Since the decision was rendered in that case a number of controversies between individual distributors and exhibitors have arisen in which exhibitors have sought to defend actions brought under such standard contracts to recover rentals for films furnished and used but not paid for, or to recover damages resulting from the refusal of an exhibitor to accept films on the ground that such contracts are wholly illegal and void. In all of the cases referred to, which will be considered hereafter, the eighteenth section of the Standard contract (hereafter called the "arbitration clause or provision") has been held to be illegal, but the courts have not been in accord as to what effect should be given to the arbitration clause in controversies arising between individual distributors and exhibitors.

The plaintiff, while conceding that the arbitration clause was held illegal in the suit brought to enjoin the conspiracy in *United States v. Paramount Famous Lasky Corp., supra,* contends that in an action brought by an individual distributor against an individual exhibitor a different situation arises, and that in such a case the court should hold that the illegal arbitration clause is separable from the remainder of the contract, since it simply relates to the remedy to be

pursued in case a dispute arises between the parties, and that, eliminating the illegal arbitration clause, a complete valid contract remains which should be enforced by the courts.

The defendants, on the other hand, contend that the arbitration clause is illegal, and that that clause may not be separated from the other provisions of the contract and eliminated therefrom because the illegal clause permeates the entire contract and is so vitally a part thereof as to render the enforcement of the contract improper.

In *Columbia Pictures Corporation v. Bi-Metallic Inv. Co.* 42 Fed. (2d) 873, District of Colorado, the plaintiff sought to recover damages for the failure and refusal of the defendant to accept and pay for certain films for which it had contracted. Defendant, in support of its demurrer, argued that the contract was illegal as held by Judge THACHER in *United States v. Paramount Famous Lasky Corp., supra.* The court, however, held that, eliminating the arbitration clause, the contract was one that the parties might lawfully enter into and, since the arbitration clause was not invoked by the plaintiff and was not called to the attention of the court by any pleading, it was not in issue.

In *Paramount Famous Lasky Corp. v. National Theatre Corp.* 49 Fed. (2d) 64 (Circuit Court of Appeals, Fourth Circuit), the plaintiff sought to recover for certain films furnished for which the defendant refused to pay. The defendant demurred to the declaration on the ground that the plaintiff had failed to comply with a condition precedent to suit in that it had not submitted the matters in controversy to arbitration as provided in the contract. The district court below sustained the demurrer. On appeal, however, the court held that since the contract containing the arbitration clause had been enjoined by the district court, *United States v. Paramount Famous Lasky Corp., supra,* arbitration was thereby prevented and arbitration therefore could no longer be considered as a condition precedent to bringing

suit. The court further stated in support of its judgment reversing the district court (p. 66):

"Again we think that the learned judge below was in error for another reason, and that is that the contract, as far as it related to the lawful and unlawful parts, was divisible. That this was the opinion of Judge THACHER, in the case of *United States v. Paramount Famous Lasky Corp., supra*, is shown by the excerpt from his decree. That such a provision, as the one in question here, is separable from the rest of the contract, is borne out by a number of decisions. *Western Union Tel. Co. v. Pennsylvania Co.* (C. C. A.) 129 Fed. 849, 68 L. R. A. 968; *Atlanten Case* (D. C.) 232 Fed. 403; *United States Asphalt Co. v. Trinidad Lake Petroleum Co.* (D. C.) 222 Fed. 1006; *The Eros Case* (C. C. A.) 251 Fed. 45. As to the arbitration clause, see *The Fredensbro* (D. C.) 18 Fed. (2d) 983; *Danielsen v. Entre Rios Rys. Co.* (D. C.) 22 Fed. (2d) 326.

"The authoritative rule as to separable or divisible contracts is laid down by Lord MANSFIELD in *Boone v. Eyrne*, 6 Term Reports, 573, as follows: 'Where mutual covenants go to the whole of the consideration on both sides, they are mutual covenants; but where the covenants go only to a part and where a recompense may be had in damages, it is a different thing.' "

In *Vitagraph, Inc. v. Theatre Realty Co. Inc.* 50 Fed. (2d) 907 (District Court Pa.), the plaintiff sought to recover for films supplied by it which had been exhibited and used by the defendant. It was intimated by that court that the plaintiff might recover *quantum meruit*. In *Fox Film Corp. v. Ogden Theatre Co. Inc.* (Utah) 17 Pac. (2d) 294, recovery was sought for rentals. The contracts contained the illegal arbitration clause, and their legality was questioned under *Paramount Famous Lasky Corp. v. United States, supra*. The court held the arbitration clause void, but separable from the remainder of the contract.

The plaintiff relies on the foregoing authorities and contends that the arbitration clause is properly separable from the remainder of the contract.

In *Majestic Theatre Co. Inc. v. United Artists Corp.* 43 Fed. (2d) 991, the plaintiff brought action to recover damages for unlawful conspiracy. The defendants apparently claimed validity of their acts under the terms of the standard exhibition contract. The court, however, found the acts themselves unlawful and refused to permit the defendant to resort to the contract for the purpose of nullifying the will of Congress as expressed in the anti-trust laws. In *Fox Films Corp. v. C. & M. Amusement Co.* (S. D. of Ohio) 58 Fed. (2d) 337, the plaintiff sought to recover under two standard exhibition contracts. The defendant answered claiming the contracts illegal and in restraint of trade. The plaintiff demurred. It was contended that the arbitration clause is distinct and separable from the remainder of the standard contract and that after eliminating and disregarding that clause there remained a perfectly legal enforceable contract. After reviewing a number of decisions upon which the plaintiff therein relied, the court stated (p. 339) :

"This court is unable to accept the theory upon which these decisions seem to rest, that is, that the standard contract is divisible and separable, to the end that, after expunging the illegal portion, a party to it may be held to answer in damages to the amount of the unperformed contract price. . . . The fraudulent and illegal elements permeating these contracts must, it seems to the court, taint and void the entire contract so far as it may affect or bind one who through the medium of coercion has become a party to it."

The court further held that the case was not ruled by *Connolly v. Union Sewer Pipe Co.* 184 U. S. 540, 22 Sup. Ct. 431, or *Continental Wall Paper Co. v. Louis Voight & Sons Co.* 212 U. S. 227, 29 Sup. Ct. 280, and *Small Co. v. Lamborn & Co.* 267 U. S. 248, 45 Sup. Ct. 300, since defendant had not had the value and benefit of purchased

goods. The plaintiff's demurrer to the answer was over-ruled. In *Fox Film Corp. v. Tri-State Theatres,* 51 Idaho, 439, 6 Pac. (2d) 135 (which was an action for damages), substantially all of the prior decisions involving similar controversies were reviewed. The court held the standard contract containing the compulsory arbitration clause and providing for joint action to enforce the arbitration rules, unenforceable, saying:

"Had the pictures involved in this case been accepted and used by the exhibitor, perhaps then an obligation would have arisen to pay on *quantum meruit.* This thought may have prompted the clauses referred to in Judge THACHER's decree. The discussions in *Columbia Pictures Corp. v. Bi-Metallic Inv. Co.* 42 Fed. (2d) 873; *Paramount Famous Lasky Corp. v. National Theatre Corp., supra; Fox Film Corp. v. Buchanan,* 17 La. App. 285, 136 South. 197, and *Metro-Goldwyn-Mayer Distributing Corp. v. Bijou Theatre Co.* 50 Fed. (2d) 908, seem to be on that theory. But they go further and treat the obligation as for goods sold pursuant to a contract merely invalid in part, and they treat what remains of the contract as a free collateral agreement between an illegal trust and a third person. In this we cannot follow them. We think the contract, at least as alleged, is a part of the illegal combination within the doctrine of *Continental Wall Paper Co. v. Louis Voight & Sons Co.* 212 U. S. 227, 29 Sup. Ct. 280, 53 Lawy. Ed. 486, and *McMullen v. Hoffman,* 174 U. S. 639, 19 Sup. Ct. 839, 43 Lawy. Ed. 1117.

"In this case the contract was executory. The pictures were not received nor is the contract in question a collateral agreement between a trust and a third party. It is the general agreement which in the original case the United States contended and the court held was illegally adopted and was itself coercing in restraint of interstate commerce in violation of the Sherman Act."

In *United Artists Corp. v. Piller,* 62 N. Dak. 289, 244 N. W. 20, the plaintiff distributor sought recovery on nine

standard contracts for furnishing films which the defendant refused to accept. It was there conceded that the arbitration provision was invalid, but it was contended that the illegal part of the contract was separable from the other provisions. After reviewing all of the authorities, the court held the contract illegal and that an action could not be maintained thereon. In *Universal Film Exchanges, Inc. v. West,* 163 Miss. 272, 141 South. 293, the arbitration provisions were again conceded to be illegal, but contention was there made that the illegal portions of the contract should be separated from the legal portions and the latter enforced. The court said (p. 278):

"In the determination of the question whether the illegal portion of a contract may be severed from the remainder, it is not permissible to simply strike out and wholly disregard the illegal portion as if it had never been a part of the agreement. *McMullen v. Hoffman,* 174 U. S. 639, 19 Sup. Ct. 839, 43 Lawy. Ed. 1117. On the contrary, the illegal as well as the legal portions must be taken into view, and thereupon the question, to state it tersely, is whether there is a vital connection between the illegal portion and the other portion. Another statement of the rule is that even though it might be possible to sever the illegal from the legal portion of the contract, yet, if there are no means by which to ascertain whether the promise was induced by the legal or illegal portion, the entire contract will be held illegal if one of the material elements thereof is unlawful. 3 Elliott, Contracts, pp. 350, 351. Here we have a case before us which falls not only within the rule as last stated, but which comes within the rule of vital connection first mentioned; for it is expressly stipulated in the contract, and here we call particular attention to the third paragraph of the eighteenth or arbitration section of the contract copied above, that, unless the said unlawful provision shall be complied with by the exhibitor, the distributor shall have the right to terminate the contract. In other words, the contract expressly provides that, unless the exhibitor shall be bound by and shall

observe the illegal portion of the agreement, the distributor shall not be bound by any of the said contract, but may wholly terminate it. Therefore the illegal portion inseparably and vitally connects itself with all the other parts, and, in consequence, the illegal portion infects the entire contract with illegality."

It appears to us that the weight of authority, as well as sound reason, supports the conclusions, first, that the arbitration clause is unquestionably illegal, and second, that its inclusion so influenced the making of the contract as to render its separation from the legal portion of the contract improper. The fight made to sustain the arbitration clause in the litigation which culminated in *Paramount Famous Lasky Corp. v. United States, supra,* would seem to indicate its great importance to the combination plan. The arbitration clause provides that in the event that the exhibitor shall fail or refuse to submit to arbitration, the distributor may, at its option, demand security for its protection, and, upon failure to comply with such demand, may suspend service or terminate the contract. It seems clear, from these provisions, that the arbitration plan embodied in the contract is so closely connected and tied into the remainder of the contract that it must be said that the illegality permeates the whole contract.

The conflicting holdings of the courts may be due in part to the fact that there seems to be disagreement as to just what was held in *United States v. Paramount Famous Lasky Corp.* 34 Fed. (2d) 984, which decree was affirmed in *Paramount Famous Lasky Corp. v. United States,* 282 U. S. 30, 51 Sup. Ct. 42. The decree entered by Judge THACHER is not fully recited in any of the decisions. A copy of that decree reveals that it was entered January 21, 1930, and specifically enjoined, restrained, and prohibited "the defendants, their officers, agents, servants, and employees and all

persons acting under, through or on behalf of them, or any of them, . . . individually and collectively : . . .

"3. From entering into any agreement embodying the provisions of paragraph 'Eighteenth' of said 'Standard Exhibition Contract' dated May 1, 1928, or the provisions of said 'Rules of Arbitration' dated May 1, 1928."

It seems to us that the language just quoted is clear and specific, and clearly enjoined, restrained, and prohibited any producer or film board or agent or officer thereof from entering into any agreement in which the arbitration clause was embodied.

The following language found in the decree has been referred to as justifying the holding that paragraph "Eighteenth" of the "Standard Exhibition Contract" is properly severable from the remainder of the contract:

"Nothing contained in this decree shall be construed as prohibiting any defendant or any member of any defendant Film Board of Trade from performing and/or continuing to perform, or enforcing and/or continuing to enforce, by any lawful means any contractual obligation the performance or enforcement of which is consistent with the provisions of this decree. Nor shall anything contained in this decree be construed as prohibiting any defendant or any member of any defendant Film Board of Trade from selecting his or its own trade, from disposing of his or its own products, or from making any contracts with or without provisions relating to arbitration—all upon such terms as he or it may choose,—provided such acts are done individually and without combining, conspiring or agreeing with any other defendant or any member of any Film Board of Trade.

"Nothing contained in this decree shall be construed in derogation of the right of the defendants, or any of them, individually or jointly, to negotiate and to agree with any exhibitors of motion pictures on a standard form of contract to be used in licensing the exhibition of motion pictures or on any standard provision or provisions to be included in such license contracts, including reasonable provisions for the arbitration of disputes arising thereunder, if done volun-

tarily and without coercion, and if applied only to the parties to the negotiations and agreement."

It seems clear to us that the "Standard Exhibition Contract" containing paragraph "Eighteenth" was declared illegal by Judge THACHER's decree.

We therefore reach the conclusion that the plaintiff's demurrer to the answer of the defendants was properly overruled.

We deem it unnecessary to pass upon the allegations of the defendants' answer which charged that the contracts were void by reason of the fact that they were obtained by the plaintiff from defendant Yeo by duress and compulsion.

*By the Court.*—Order affirmed.