## FOX FILM CORPORATION v. A. B. MULLER.[1]

June 29, 1934.

No. 29,872.

*Shearer, Byard & Trogner,* for appellant.
*Samuel P. Halpern,* for respondent.

LORING, Justice.

Appeal from an order denying plaintiff's motion for a new trial.

This action was brought to recover damages for breach of two contracts entered into between plaintiff and defendant whereby plaintiff leased numerous moving picture films to defendant, the total agreed rental for which was $1,345 plus $460 for the synchro-

[1]Reported in 255 N. W. 845.

nized scores. On the first nine pictures contracted for plaintiff was to have 50 per cent of the gross admission receipts in excess of $200, which it alleges would have aggregated $225 under the liquidated damage provision of the contract. It asserts damage in the total contract price of the rental of the films and scores plus the $225 item. The defendant relies upon the total illegality of the leasing contracts as in restraint of trade and in violation of the federal anti-trust act as determined in U. S. v. Paramount Famous Lasky Corp. 34 F. (2d) 984, affirmed 282 U. S. 30, 51 S. Ct. 42, 75 L. ed. 145. It is the custom in the moving picture trade for the distributors of the films to enter into contracts with exhibitors prior to the making of the pictures, and on dates specified in the contract the pictures are sent to the exhibitor. It is essential that the prints of the film be kept constantly moving from one exhibitor to another, since the life of the public demand for a picture is short, and any delay is costly to the producer and distributor. The contracts here in question were formulated and imposed by the producers and distributors upon the exhibitors in the same manner as those involved in the cases cited above.

Pursuant to the contracts here in question, plaintiff sent four films to the defendant at his request, who refused to accept, exhibit, or pay for them. As a consequence the pictures were not exhibited during the time they were in transit to and from the defendant.

It appears that substantially all of the moving picture producers and distributors have organized for the distribution of moving picture films and for the purpose of such distribution have set up in certain districts throughout the United States many unincorporated associations known as Film Boards of Trade. The history of these organizations and their coercive methods of imposing their standard contract upon exhibitors is all fully set out in the opinions above referred to. It would serve no useful purpose to reiterate it here. It is sufficient to say that the producers and distributors have formulated and agreed to adopt a Standard Exhibition Contract for the use of the trade; that no exhibitor could, at the time these contracts were made, obtain pictures unless he agreed to the standard contract; that the contract then contained an arbitration clause,

which the Supreme Court has held to unreasonably restrain competition and to be in violation of the anti-trust act.

The arbitration clause provided that before any action should be brought on the contract any claims arising thereunder should be submitted to an arbitration board; that the parties would be bound by the decision of the arbitration board; that in the event the exhibitor should fail or refuse to submit any claim under the contract to the arbitration board the distributor might require a bond in a sum not exceeding $500, to be posted by the exhibitor for faithful performance of that contract, or at his option the distributor might terminate the contract or any existing contract between the distributor and the exhibitor. Like bonds to, or termination by, all other distributors followed a claimed breach with any one distributor. The contract expressly provided that unless the exhibitor observed the illegal arbitration clause the distributor should not be bound by any of it and might terminate it.

The question presented on this appeal is whether the arbitration clause is severable from the contract, leaving the remainder of the contract enforceable, or not severable, permeating and tainting the whole contract with illegality and making it void.

■ Many cases involving the standard exhibition contract have been before the courts in which the same question has been presented. A careful examination of these cases finds the courts about equally divided upon the question of severability or nonseverability of the arbitration clause. Although not all the cases were actions for breach of the contract, the rule has been laid down in the following cases that only the arbitration clause is illegal and that it is severable from the balance of the contract and that the valid remainder of the contract is enforceable. Columbia Pictures Corp. v. Bi-Metallic Inv. Co. (D. C.) 42 F. (2d) 873; Paramount Famous Lasky Corp. v. National Theatre Corp. (C. C. A.) 49 F. (2d) 64; Metro-Goldwyn-Mayer Dist. Corp. v. Bijou Theatre Co. (D. C.) 50 F. (2d) 908; Fox Film Corp. v. Buchanan, 17 La. App. 285, 136 So. 197; Metro-Goldwyn-Mayer Dist. Corp. v. Cocke (Tex. Civ. App.) 56 S. W. (2d) 489; Fox Film Corp. v. Ogden Theatre Co. 82 Utah, 279, 17 P. (2d) 294, 90 A. L. R. 1299. The case of Metro-Goldwyn-

Mayer Dist. Corp. v. Bijou Theatre Co. (D. C.) 50 F. (2d) 908, although criticizing the rule laid down in Paramount Famous Lasky Corp. v. National Theatre Corp. (C. C. A.) 49 F. (2d) 64, followed the holding there handed down. On the other hand, the following cases have held that the illegal arbitration clause taints the whole contract with illegality. Vitagraph, Inc. v. Theatre Realty Co. (D. C.) 50 F. (2d) 907; Fox Film Corp. v. C. & M. Amusement Co. (D. C.) 58 F. (2d) 337; Universal Film Exchanges, Inc. v. West, 163 Miss. 272, 141 So. 293; Majestic Theatre Co. v. United Artists Corp. (D. C.) 43 F. (2d) 991; United Artists Corp. v. Odeon Building, Inc. 212 Wis. 150, 248 N. W. 784; Fox Film Corp. v. Tri-State Theatre, 51 Idaho, 439, 6 P. (2d) 135.

Most of this confusion has been occasioned by the different interpretations placed upon Judge Thacher's opinion and decree ,in the case of U. S. v. Paramount Famous Lasky Corp. (D. C.) 34 F. (2d) 984, 989, and the affirming opinion in 282 U. S. 30, 51 S. Ct. 42, 75 L. ed. 145. The language of the decree most often quoted in support of the first proposition follows [Transcript of Record, Vol. 1, p. 174]:

"Nothing contained in this decree shall be construed as prohibiting any defendant or any member of any defendant Film Board of Trade from performing and/or continuing to perform, or enforcing and/or continuing to enforce, by any lawful means any contractual obligation the performance or enforcement of which is consistent with the provisions of this decree."

The action in that case was brought by the United States for the purpose of restraining the defendants from further engaging in a conspiracy in restraint of interstate commerce in motion picture films in violation of the Sherman anti-trust act. 15 USCA, § 1. The petition of the government alleged that the defendant Film Boards of Trade (of which this plaintiff is a member) controlled the distribution of 98 per cent of all moving picture films in the United States; that the said defendants conspired to coerce and require every exhibitor to submit to arbitration all disputes *by means* of adopting for use in dealing with exhibitors a Standard

Exhibition Contract. The decree in that case uses the following language [Transcript of Record, Vol. 1, pp. 171, 172]:

"That the defendants, * * * hereby are perpetually enjoined, restrained and prohibited, individually and collectively; * * *

"3. *From entering into any agreement embodying* the provisions of paragraph 'Eighteenth' [the arbitration clause here under consideration] of said 'Standard Exhibition Contract' dated May 1, 1928, * * *." (Italics ours.)

As we interpret this language, it declares not only the arbitration clause illegal but the whole of the contract. By the decree, entrance into any agreement *containing* the illegal clause is prohibited. It would therefore seem that Judge Thacher intended the decree to hold the entire contract tainted with illegality. This intention is given added strength by the language of the opinion [34 F. (2d) 989].

"By agreement of these distributors exhibitors who were not represented in the adoption of the uniform contracts have been constrained to accept their terms regardless of their wishes, and by the compulsory system of arbitration, sanctioned and enforced by the collective action of the distributors, have been constrained to perform the *contractual obligations* thus assumed. In fairness it cannot be said that the restraint imposed upon these exhibitors is voluntary because they accept and agree to be bound by the *contracts*. They can have none other, because the defendants have agreed that they.shall not; and, unless something more than the mere acceptance of all they can get is shown, they must be said to have acted under an involuntary restraint, imposed and continued by the defendants to the end that the contracts shall be signed and their terms obeyed. That such coercive restraint upon the commercial freedom of an exhibitor, who was neither represented nor consulted with reference to the agreement to adopt the *standard form of contract,* is undue and unreasonable, both at common law and under the Sherman Act, I cannot doubt." (Italics ours.)

We accordingly construe Judge Thacher's opinion and decree as holding that the entire contract was illegal. United Artists Corp.

v. Odeon Building, Inc. 212 Wis. 150, 248 N. W. 784, 787. The opinion in that case carefully reviews all the principal decisions and comes to the conclusion that the whole contract is tainted by the illegal arbitration clause. This view of the law seems to be sound. The exhibitor was forced to enter the contract with the invalid arbitration clause in it if he was to receive any moving picture films. Should he fail to comply with the arbitration clause, he was forced by its terms to post a bond for the benefit of the distributor, and his refusal to do so gave the distributor the option of canceling and terminating the contract. The same option was given the distributor should the exhibitor refuse to submit to arbitration. All his contracts with other distributors would be canceled and he would be forced out of business with penalties to pay. The arbitration feature of the contract was the strongest kind of coercion. In practice it must have compelled performance according to the views of the distributors. It more than discouraged competition and must necessarily have been a major consideration for the contract. Without it the rights of the parties are substantially changed, and it is evident that an exhibitor could accept the contract with this clause or fail to get any pictures. As said in the Wisconsin case [212 Wis. 161]: "Its inclusion so influenced the making of the contract as to render its separation from the legal portion of the contract improper." In Universal Film Exchanges, Inc. v. West, 163 Miss. 272, 279, 141 So. 293, 294, the court said:

"In other words, the contract expressly provides that, unless the exhibitor shall be bound by and shall observe the illegal portion of the agreement, the distributor shall not be bound by any of the said contract, but may wholly terminate it. Therefore the illegal portion inseparably and vitally connects itself with all the other parts, and, in consequence, the illegal portion infects the entire contract with illegality."

The Wisconsin supreme court said of this Standard Exhibition Contract [212 Wis. 161]:

"It appears to us that the weight of authority, as well as sound reason, supports the conclusions, first, that the arbitration clause

is unquestionably illegal, and second, that its inclusion so influenced the making of the contract as to render its separation from the legal portion of the contract improper. The fight made to sustain the arbitration clause in the litigation which culminated in Paramount-Famous Lasky Corp. v. United States, supra [282 U. S. 30, 51 S. Ct. 42, 75 L. ed. 145], would seem to indicate its great importance to the combination plan. The arbitration clause provides that in the event that the exhibitor shall fail or refuse to submit to arbitration, the distributor may, at its option, demand security for its protection, and, upon failure to comply with such demand, may suspend service or terminate the contract. It seems clear, from these provisions, that the arbitration plan embodied in the contract is so closely connected and tied into the remainder of the contract that it must be said that the illegality permeates the whole contract."

■ The plaintiff insists that notwithstanding the illegality of the contract it is entitled to recover for the reasonable value of the rental of those films requested by the defendant but not used. The trial court took the position that the doctrine of Continental Wall Paper Co. v. Voight & Sons Co. 212 U. S. 227, 29 S. Ct. 280, 53 L. ed. 486, applied; and, the whole contract being illegal on the ground of public policy, no rights thereunder could be enforced by the courts although defendant may have received something under the contract. We are in accord with the trial court. There is a further reason why plaintiff may not recover on a *quantum meruit* for these films. There is no evidence whatever in the record of their reasonable rental value, and we will not resort to the contract, illegal as against public policy, for evidence. Both plaintiff's causes of action are based upon the illegal contracts. There can be no recovery even of the transportation charges. They were incurred in furtherance of those contracts. The courts will leave the parties where they find themselves. Continental Wall Paper Co. v. Voight & Sons Co. 212 U. S. 227, 29 S. Ct. 280, 53 L. ed. 486.

Order affirmed.